THE IRON CLIFFS COMPANY v. CHRISTIAN H. BUHL ET AL.

*Sale—Acts of control by purchaser—Delivery—Evidence of usage.*

A mining company agreed to sell 2000 tons of ore to an iron company and deliver it at a certain point whence it was to be taken by rail to the consignees. The contract quantity was delivered and with more ore of the same kind was deposited in a pile at the point of delivery, but the consignees directed the railroad company to cease forwarding it for a time as they had no room for it. They paid in full for the contract quantity, however, but as they did not finally receive the full amount they sued the railroad company for the amount which it had failed to deliver. *Held* (1) that by these acts the iron company asserted their understanding that when the ore was delivered in the pile it was under their control, and (2) that they could not sue the mining company for the deficiency.

Where ore is piled at the point of delivery in a mass larger than was contracted for, and nothing remains but to take the contract quantity from the pile, *it seems* that it is a sufficient delivery.

Law books cannot be read to the jury to establish local usages of trade that are subject to change.

Error to Marquette. Submitted Oct. 16. Decided Oct. 30.

ASSUMPSIT. Defendant brings error.

*W. P. Healy* for plaintiff in error. A usage by which different purchasers of ore are entitled, on demand, to take the quantity bought by each, from a common pile where it has been deposited on delivery, is valid, *Hutchinson v. Com.*, 82 Penn. St., 472; *Wilkinson v. Stewart*, 85 Penn. St., 255; *Kimberly v. Patchin*, 19 N. Y., 330; *Damon v. Osborn*, 1 Pick., 477; delivery of ore to a carrier to be forwarded to its destination, is delivery to the purchaser if made according to known usages, *Watkins v. Paine*, 57 Ga., 50; *Turner v. Mellier*, 59 Mo., 526; the mode of delivery that is valid in Pennsylvania should be held valid wherever it comes in question, *Bissell v. Lewis*, 4 Mich., 450; *Penobscot R. R. v. Bartlett*, 12 Gray, 244;

*Cragin v. Lamkin,* 7 Allen, 395; *Snow v. Perkins,* 2 Mich., 238; *Holdridge v. F. & M. Bank,* 16 Mich., 66; the law of foreign States may be shown from their reports, Comp. L., § 5936; *Ames v. McCamber,* 124 Mass., 85.

*Dan. H. Ball* for defendant in error. The title to a quantity of merchandise taken from the mass does not pass unless there has been a sale of a definite quantity out of an ascertained mass of uniform quality and value, Benj. Sales, § 352, *n.*

GRAVES, J. In 1871 defendants in error, with one James Westerman, were pursuing the furnace business at Sharon, in the State of Pennsylvania, as copartners under the name of the Westerman Iron Company, and the plaintiffs in error were a mining corporation under the laws of Michigan, and engaged in mining iron ore at Negaunee, in our northern peninsula. The corporation were from time to time shipping their ore to Erie, Pennsylvania, and the Westerman company were in the way of receiving ore from that point by rail for their business.

At this time Rhodes & Co., of Cleveland, Ohio, were agents for the corporation in contracting sales of their ore, and on the first day of August of that year they contracted on behalf of the Cliff company with the Westerman company for the sale of a quantity of ore.

The agreement was written and in these terms:

"Agreement between the Iron Cliffs Iron Company, of Negaunee, Lake Superior, by its agents, Rhodes & Co., of Cleveland, Ohio, and Westerman Iron Co., of Sharon, Pa., made at Cleveland, Ohio, August 1, 1871:

" WITNESSETH, That the said Iron Cliffs Company, iron company, for the considerations hereinafter named, hereby agree to sell to the said Westerman Iron Co. two thousand gross tons of Barnum iron ore, of its standard quality, deliverable at Erie, Pa., during the season of 1871, afloat at the docks of the Erie & Pitts. R. R. Co., and as near 500 tons per month as practicable, but with the agreement that if ore is lost by disasters of navigation, too late to be replaced, said Iron Cliffs Iron Company shall

not be held accountable for non-delivery thereby occa-
sioned.    Said ore is to be paid for by the said Wester-
man Iron Co. at the rate of 8.20 dollars per ton, in
equal payments of $—— each, payable on the first days
of August, September, October and November next,
respectively, each of which payments is to consist of the
note of said Westerman Iron Company for 5.90 per ton
dollars at four months, payable at Cleveland, O., and 2.30
dollars in cash, all in funds par at Cleveland.

Said Westerman Iron Co., for the above named con-
siderations, hereby agree to buy, *receive* and pay for said
ore as above mentioned."

The Westerman company paid in full for the amount
of ore contracted for; but some three hundred tons out
of the two thousand agreed for failed to reach the works
of the Westerman Company at Sharon, and Westerman
having retired and assigned his interest to defendants in
error, they proceeded, after a lapse of nearly six years,
to bring this action on account of the mining ore.

They were allowed to recover, and the corporation has
brought error.    The points agitated are numerous, but
the case depends on one or two main considerations.

The plaintiffs in error actually shipped to the railroad
dock at Erie a considerably larger quantity than was
bargained to the Westerman Company, and they intended
two thousand tons of it for them.

As no one appeared to accept it afloat, it was landed
on the dock in charge of the railroad company for the
benefit of the buyers.    This was the only course fairly
practicable, and it was the course the Westerman Com-
pany expected would be taken and the course which
received their subsequent sanction.    The position of
defendants in error that the ore was to become the
property of the Westerman Company only as it was deliv-
ered to them at Sharon and that during its deposit on
the dock in a larger pile it remained the property of
plaintiffs in error, cannot be sustained.    Both parties
understood that it should be left and was left for the
railroad company to hold and carry for the buyers.

The circumstance that the pile contained more than

was bargained to the Westerman Company is of no importance under the facts in this record. It was all of the same kind and quality, and there was nothing to do except to take away from the common mass the required quantity, and the case is certain that it was fully contemplated that the railroad company should attend to that business. Rhodes & Co. notified the agent of the railroad company that two thousand tons of the ore belonged to the Westerman Company, and he forwarded over sixteen hundred tons which they received; and in the course of the fall and whilst he was sending the ore forward, they interposed and required him to cease for awhile. The explanation given is that they lacked room and that the railroad company would charge them for the use of the cars if left unloaded at Sharon.

Here was a clear exercise of dominion over the ore, and an act inconsistent with the notion that it was not subject to their control, and that delivery was to be made by plaintiffs in error at Sharon.

According to the evidence the failure of the Westerman Company to receive the missing ore at Sharon was owing to a miscarriage by the railroad company, and it appears that soon after discovery of the loss they sued the railroad company to recover for the ore as their property. This was an unequivocal assertion of their understanding that the ore was under their control as their property when piled upon the dock and ready for removal to Sharon by the railroad company and by them known to be subject thereto.

The circuit judge allowed the jury to find, however, that of the ore in that situation the portion which was taken by the railroad company and by them miscarried was not at the risk of the Westerman Company, or their property, but was still the property of the Cliff corporation in the hands of the railroad company as the agents of the Cliff corporation. We think this was contrary to unquestionable facts.

The refusal to permit certain adjudged cases in Penn-

42 MICH.—12.

sylvania to be read to the jury from the books of reports was not error. The law of Pennsylvania was not in dispute. The claim was that there existed at Erie a particular custom or usage in regard to the mode of handling and delivering ore, and this if true was a local fact not necessarily stable but subject to be changed as experience and altered circumstances might dictate, and it was not a matter to be proved by law books. Much, however, of the way in which things were done there, and all of importance, was matter of necessity and of understanding rather than of custom. Further discussion does not appear necessary.

The judgment must be reversed with costs, and a new trial granted.

The other Justices concurred.