The Upham Manufacturing Company, Respondent, vs. Sanger and others, Appellants.

*May 7 — June 3, 1891.*

*Logs and lumber: Sale: Destruction before delivery: Construction of contract.*

By a written contract the plaintiff agreed to "sell, assort, and deliver on cars" to the defendants when demanded, all the lumber, except culls, which had been or could be made out of a certain lot of logs; to pile and assort the lumber under the direction of the defendants; and to keep it insured for their benefit. The defendants agreed to pay certain prices for the different grades; on certain dates to estimate the finished piles, and to pay three fourths of the agreed prices for the lumber therein, and make payment in full for all that had been previously shipped; and on a certain later date to make a final estimate and settle in full for the lumber, excepting a reserve of fifty cents per thousand feet, which should be paid when the lumber was loaded on the cars. It was further agreed that when payments were made upon the contract the lumber became the property of the defendants. The final estimate was made as agreed, but afterwards a portion of the lumber was burned before it had been loaded on the cars, and the defendants received the insurance thereon. *Held:*

   (1) The title to all the lumber had passed to the defendants.

   . (2) The fifty cents per thousand feet reserved until the lumber was loaded, was not so reserved as the expense of loading, but, as to the lumber burned, became due when such burning rendered the loading impossible.

The Upham Mfg. Co. vs. Sanger and others.

(3) The defendants were bound, under the contract, to pay for the lumber burned according to the estimates thereof in the piles, without any deduction for culls, notwithstanding it had been the practice for them to make payments according to the shipping measurements after culls in the piles had been thrown out.

APPEAL from the Circuit Court for *Portage* County.

Action to recover a balance alleged to be due upon a contract for the sale of lumber. The facts will sufficiently appear from the opinion. The defendants appeal from a judgment in favor of the plaintiff.

For the appellants there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *E. H. Bottum.* They contended, *inter alia,* that if the fifty cents per thousand feet was not an agreed price for loading, it was at least the contemplation of the contract that the prices named for the lumber included the cost of putting it on the cars, and that this sum of fifty cents per thousand feet was reserved as a penalty, or perhaps rather in the nature of *debitum in præsenti, solvendum in futuro,* and that it comes within the rule of *Jackson v. Cleveland,* 19 Wis. 400; *Dullaghan v. Fitch,* 42 id. 679; *Berrinkott v. Traphagen,* 39 id. 219; *Yenner v. Hammond,* 36 id. 277.

For the respondent there was a brief by *Raymond & Brennan,* and oral argument by *John H. Brennan.* They argued, among other things, that after title had passed in a contract of sale, and the goods are destroyed without the fault or negligence of either party, the vendee cannot retain from the purchase price any amount whatsoever under the plea that the vendor has been relieved, by the accidental destruction of the property, from the performance of some duty he owed the vendee in respect thereto. 2 Benj. Sales, 748–9; *Taylor v. Caldwell,* 3 Best & S. 826; *Dexter v. Norton,* 47 N. Y. 62; *Cook v. McCable,* 53 Wis. 250; *Rugg v. Minett,* 11 East, 210; *Morrow v. Delaney,* 41 Wis. 160; *Gill v. Benjamin,* 64 id. 362; *Powers v. Dellinger,* 54 id. 389;

*Pratt v. Peck,* 70 id. 625; *Terry v. Wheeler,* 25 N. Y. 525; *Wilkinson v. Holiday,* 33 Mich. 386; *Whitcomb v. Whitney,* 24 id. 486; 1 Benj. Sales, 336.

ORTON, J.  The respondent is a corporation, and operates a saw-mill at Marshfield, in this state; and the appellants are partners and extensive manufacturers of all kinds of building materials made of wood, and large dealers in all kinds of lumber, in the city of Milwaukee.

On the 4th day of February, 1886, the parties entered into a contract, in which it is recited that the respondent claims to own and have a nice lot of white pine saw-logs at and about its mill, and being cut and hauled to the mill, amounting to ten or twelve million feet.  By said contract the respondent agreed "to sell, assort, and deliver on cars at Marshfield" to the appellants when demanded, all the lumber (except mill culls) which had then been made and which could be made out of said lot of logs; and also "to saw, edge, trim, pile, and assort in a workmanlike manner, as fast as the same can be done, and load on cars, all the said lumber, lath, and No. 1 pickets, under the direction of the appellants or their agent; also to roof all lumber piles with cull boards, and to keep all the lumber, lath, and pickets fully insured for the benefit of the appellants and in companies to be approved by them."  The appellants agreed to pay for said lumber which is better than common, $12.75 per 1,000 feet; for common, $4.50 per 1,000 feet; and for lath, ninety cents per 1,000 pieces; and for mill culls, if they wish to have any, $3.50 per 1,000 feet, etc.  The appellants agreed also to estimate the finished piles of lumber, lath, and pickets on the 1st day of May, 1886, and pay a sum equal to three fourths of the above prices for said lumber, lath, and pickets so piled in finished piles, and to make payment in full for all that had been shipped before that date, and on July 1st to make a further estimate and

The Upham Mfg. Co. vs. Sanger and others.

payment on the same basis, and on the 1st days of September and November to make further estimates and payments on the same basis. The appellants agreed also to make a final estimate about the 25th day of December, 1886, and to then settle in full for said lumber, lath, and pickets, after deducting previous payments, excepting a reserve of fifty cents per 1,000 feet, which shall be paid when lumber is loaded on the cars; and it was agreed also that when payments are made the lumber, etc., shall become the property of the appellants, free from all liens and incumbrances.

The pleadings are not material. The respondent claims the fulfilment of this contract on its part, and the balance due thereon. The appellants deny a strict fulfilment of the contract by the respondent, and counterclaim for damages. The testimony tended to prove, and the referee found, that all the estimates and payments provided for in the contract were made, and that the final estimate was also made in December, 1886, and that afterwards all the lumber was shipped, excepting about 4,000,000 feet, which remained in the mill-yard, and had been piled up and estimated, and was burned on the 27th day of June, 1887. There is no controversy about anything except the lumber, and that is really confined to the lumber so burned. It was fully insured in the piles, and the appellants received the insurance money. After deducting all payments the referee found due to the respondent the sum of $4,429.04. But the referee found also that there should be deducted from this amount what it was worth to have delivered the lumber so burned on the cars; and found that it would have been worth twenty-five cents per 1,000 feet, making in all the sum of $989.02, which, being so deducted, would leave due to the respondent the sum of $3,440.02. In this balance is included the fifty cents per 1,000 feet reserved by the contract; and the referee accepted as the amount of the lumber burned the estimate made of it in the piles.

The referee found also that the fifty cent reserve was not so reserved to meet the cost of loading the lumber on the cars, but deducted the cost of so loading on the cars at twenty-five cents per 1,000 feet of the lumber so burned. The only real difference in the result, made by the modification of the report of the referee by the court, is that the court rejected the finding of twenty-five cents per 1,000 feet for loading to be deducted, and gave the respondent interest on $2,450 from January 1, 1887, the time when it should have been paid, instead of from the commencement of the suit.

The only contention on this appeal is that the appellants claim: *First.* That they should be required to pay only for lumber actually shipped, or according to the shipping measurements, and not according to the estimate made of it in the piles in the yard. They contend (1) that such is the contract; (2) that such is the practical construction of the contract in relation to all the lumber actually shipped; and (3) that there were always mill culls in the piles, which could not be rejected in any other way. *Second.* That the fifty cents per 1,000 feet, reserved in the contract, was so reserved to compensate the appellants for loading the lumber on the cars in case the respondent failed to do so, and that therefore such reserve on the lumber burned should be deducted from the amount unpaid, instead of one half of it, as allowed by the referee.

The court was clearly right in holding that such reserve had no reference to the loading on the cars. The contract is silent as to the purpose of this reserve, and provides only that it shall be paid when the lumber is loaded on the cars, as the time, and not the purpose, of such payment. The balance of the lumber was burned in the piles, without the fault of the respondent. This is so found by the referee upon sufficient evidence. It was therefore not the fault of the respondent that it could not be loaded on the cars. The

respondent was ready and willing to do so. As to the respondent and the time when such reserve should be paid, it should be treated as already loaded on the cars, or as equivalent to a complete performance of this requirement. Therefore the fifty cents per 1,000 feet, so reserved, of the lumber burned, was due to the respondent. This is not a case of equity, but of contract. The respondent has not been compelled to load this lumber on the cars. But neither have the appellants been compelled to do so. The finding of the referee that twenty-five cents per 1,000 feet should be credited to the appellants because the respondent has not loaded this lumber on the cars has no basis whatever in the contract. The appellants are the more consistent in claiming that the fifty cents per 1,000 feet was reserved for that purpose, and that they are entitled to a deduction of the whole of it. This disposes of the second above contention of the learned counsel of the appellant as to the reserve mentioned in the contract.

As to the rejection of mill culls supposed to be in the piles of lumber after it has been assorted, piled up, and estimated, it must be admitted that such was the practice in respect to all the lumber that had been shipped; that is, the payments had been made according to the shipping measurements after any mill culls in the piles had been cast aside. From this practice and the amount of culls so rejected the appellants have approximated an estimate of the probable culls in the piles of lumber burned, and claim that at least 200,000 feet of such lumber were mill culls. This would be a plausible argument if there was any doubt or ambiguity about the contract. Such a practical construction of the contract would be entitled to considerable weight if the contract requires any practical construction to make clear the intention of the parties, not sufficiently expressed by its terms. There is nothing in the contract that makes the payments depend upon the amount of the

lumber actually shipped or upon shipping measurements. Three fourths is to be paid upon the estimates made of the lumber in the piles, and the other fourth is to be paid when it is shipped; but the whole payment depends upon this one estimate made in the piles. When payments are made on the contract (that is, the three-fourths payments made on the estimates in the piles) the lumber becomes the property of the appellants. As soon as the piles are made and estimated, the lumber is insured for the benefit of the appellants in companies to be approved by them. How could the three-fourths be paid for on such estimates in the piles and at the same time upon the shipping measurements? Not only the three-fourths paid, but the one-fourth unpaid, is determined by such estimates alone, and then the property in all the lumber embraced in such estimates passes to the appellants.

The mill culls, if any, are supposed to be rejected when the lumber is assorted and piled. The final estimate is to be made the last of December, 1886, and then there is a "settlement in full for said lumber," made on such final estimate, and on nothing else, and the balance is paid, after deducting previous payments, excepting the fifty cent reserve, which does not become due until the shipment. On this day of final estimate and full settlement a large part of the lumber has not been shipped. It is still in the piles. The appellants must order its shipment, and they may delay to do so for a long time afterwards, as they did. The respondent should have been paid in full on the estimates, except the reserve, and all the lumber has become the property of the appellants. Such are the clear and explicit terms of the contract. The shipment of the lumber cuts no figure in the contract, except as to the time when the one-fourth of the payments and the fifty cent reserve are to be paid, before the final estimate. On the final estimate the whole is to be paid except the reserve. After

that the respondent does not wait for his money, except the reserve. All the payments are made on estimates. Mill culls are not mentioned in the contract except that the appellants shall pay $3.50 per 1,000 feet for any they may wish to purchase. The piles estimated are supposed to be good lumber, worth $12.75 per 1,000 feet. If there should be any culls in the piles it is the fault of the appellants, whose agents assisted in making the estimates, and were satisfied with their correctness.

The learned counsel of the appellants express some doubt whether, rather than claim that, the property in all of the lumber does not pass to the appellants absolutely under the contract so long as there remains anything to be done by the respondent, and that the contract remains executory until the lumber is loaded on the cars. It is not worth while to stick in the bark by the use of technical terms in the construction of the contract when it is conceded that the property in the lumber burned had already passed to the appellants in the piles, and they have received the insurance for its loss. The contract is not entire and indivisible, if it appears from its terms that the parties did not intend to make the entire performance of it a condition precedent to receiving payment. This is the principle of the cases cited by the learned counsel,— of *Jackson v. Cleveland*, 15 Wis. 107, and *Clark v. Clifford*, 25 Wis. 597. The contract provides for full settlement and payment on the final estimate of the lumber in the piles, except of the reserve of fifty cents per 1,000 feet. Treating the lumber burned as having been loaded on the cars, the reserve thereon also became due and payable. The conclusion follows that the respondent has fully performed the contract, and is entitled to the full final payment.

It is highly commendable to both parties that in this large lumber transaction, involving nearly $150,000, they have had so little cause of complaint against each other,

and have treated each other with mutual forbearance, without seeking unworthy advantage. In so large a transaction their disagreement has been comparatively very slight. The learned counsel have well represented their honorable clients in the manner in which they have conducted their litigation. The findings and judgment of the circuit court are sustained by the evidence, and there appears to be no error in the record.

*By the Court.* — The judgment of the circuit court is affirmed.