Brown vs. Oneida County.

Brown, Respondent, vs. Oneida County, Appellant.

Brown Bros. Lumber Company, Respondent, vs. Same, Appellant.

Brown & Robbins Lumber Company, Respondent, vs. Same, Appellant.

Brown, Respondent, vs. Same, Appellant.

Rib River Lumber Company, Respondent, vs. Same, Appellant.

Brown, Respondent, vs. Same, Appellant.

*February 4 — May 16, 1899.*

*Taxation: Assessment: Board of review: Jurisdiction: Findings: Reassessment: Evidence.*

1. The duties of a board of review are *quasi*-judicial, and courts have no jurisdiction to disturb its findings and determinations unless it is acting in bad faith, or outside its jurisdiction, or in intentional disregard of law.

2. On August 25, fifty-seven days after the time fixed by sec. 1060, R. S. 1878, for its annual meeting, a board of review, acting on impressions and information received by individual members, on its own motion and without any testimony, increased the aggregate valuations of the assessor on certain property $20,500. October 15, the owners appeared before the board and demanded that such valuations be reduced to the actual valuations, and that they be allowed to furnish testimony before the board concerning such valuations. Nothing more was done by the board, except to employ an attorney, until November 25, when the board reconsidered its action of August 25, and proceeded to hear evidence, and on December 4,

finally fixed the valuations, in the aggregate, $17,000 more than those of the assessor. No notice of an intention to raise the assessor's valuations on such property was given until November 25. In an action to set aside the taxes levied on such valuations, on the ground that the assessment was illegal, the answer admitted that the assessor, according to the best of his judgment, assessed the property at the full value which could be obtained at private sale. *Held*, that the board did not keep within its jurisdiction, but reached its conclusion without evidence and arbitrarily, and then, intentionally and wrongfully and contrary to the overwhelming weight of evidence, refused to change or modify its conclusions, except in certain particulars which left the badge of bad faith and intentional wrong on its conduct, and that under such circumstances courts have jurisdiction to review its action.

8. Expressions in the opinion of the trial judge, that he acquits the board of "bad faith" and "express intent to injure or wrong plaintiff," are insufficient to nullify findings of the court that when the final action was taken the members of the board were incapable of making a fair and impartial determination.

4. No reassessment is necessary when the illegality found does not affect the groundwork of the tax, nor all the property in the municipality or assessment district, nor any property not involved in the suit.

APPEALS from judgments of the circuit court for Oneida county: CHAS. V. BARDEEN, Circuit Judge. *Affirmed.*

The facts are stated in the opinion.

*George Curtis, Jr.,* and *A. W. Shelton,* for the appellant, contended, *inter alia,* that knowledge obtained by the board of review may be treated as evidence on which they could properly change the valuations of the assessor. *Hixon v. Oneida Co.* 82 Wis. 515; *T. B. Scott L. Co. v. Oneida Co.* 72 Wis. 158; *McIntyre v. White Creek,* 43 Wis. 620; *State ex rel. Smith v. Gaylord,* 73 Wis. 306. The court cannot properly weigh the evidence produced before the board of review or substitute its judgment for that of the board on questions of values. *Steele v. Dunham,* 26 Wis. 393; *Milwaukee I. Co. v. Schubel,* 29 Wis. 444; *Fond du Lac W. Co. v. Fond du Lac,* 82 Wis. 322; *State ex rel. Smith v. Gaylord,* 73 Wis. 306. The court could not grant the relief prayed

without requiring a reassessment. Sec. 1210*b*, R. S. 1878; *Mills v. Gleason,* 11 Wis. 497; *Warden v. Fond du Lac Co.* 14 Wis. 621; *Smith v. Smith,* 19 Wis. 619; *Dean v. Borschenius,* 30 Wis. 247; *Marsh v. Clark Co.* 42 Wis. 512; *Single v. Stettin,* 49 Wis. 647; *Plumer v. Marathon Co.* 46 Wis. 163; *Flanders v. Merrimack,* 48 Wis. 568. The judgment of the trial court did not require the payment of plaintiffs' equitable share of the legal tax. *Marsh v. Clark Co.* 42 Wis. 502; *Flanders v. Merrimack,* 48 Wis. 568. Payment of interest should be required as a condition of relief. *Arnold v. Juneau Co.* 43 Wis. 627; *Hixon v. Eagle River,* 91 Wis. 649.

For the respondents there was a brief by *S. H. Alban, S. S. Miller,* and *John Barnes,* and oral argument by *Mr. Miller* and *Mr. Barnes.*

CASSODAY, C. J. These six several actions were brought by the respective plaintiffs to set aside the taxes for the year 1896 on the several parcels of real estate in Rhinelander, described in the several complaints, on the sole ground that the assessment was illegal. Each of the six complaints alleged, in effect, that it was the general plan and purpose of the assessor to assess all the property in the city at not to exceed its full cash value, but that as to all of the properties in the suit (except the *E. O. Brown* residence) they were assessed for a value largely in excess of their actual value. The *E. O. Brown* residence is alleged to have been assessed at the actual value. In all of the other cases the overvaluation by the assessor is alleged to have been wilful and fraudulent. It is also alleged that the board of review, without hearing evidence, raised the assessor's values on all and singular of the properties in suit, to wit, on the *W. E. Brown* residence $1,000, on *Brown Bros. Lumber Company's* plant $7,000, on *Brown & Robbins Lumber Company's* plant $4,500, on the *E. O. Brown* sawmill $2,000, on the *E. O. Brown* planing mill $1,000, on the *E. O. Brown* residence $2,000, on the *Rib River Lumber*

Brown vs. Oneida County.

*Company* planing mill $1,000, on the *A. W. Brown* residence $1,000; that thereafter the plaintiffs, respectively, appeared before. the board, and offered testimony showing that the property in each case was of the value alleged in the complaint and .no more, and that no competent testimony was offered to the contrary, and that the board of review nevertheless refused to recede from its value before fixed, except in the case of *E. O. Brown's* sawmill and the *E. O. Brown* planing-mill properties, and as to these two properties the board reduced their own valuation on the planing-mill property $500, and reduced their own valuation on the sawmill property $2,000, to the amount fixed by the assessor; that such action of the board was wilful and corrupt, with full knowledge that the values were excessive, and with intent to make the plaintiffs, respectively, pay more than their just share of the taxes, and that such was the result of their action. The several amounts of taxes against the several properties are set out in the respective complaints, together with the fact that they had been sold for the taxes, and that the county held the several certificates.

The several answers are each to the effect that the defendant admits that the valuation originally fixed by the assessor upon the lands in and by the assessment was the sum alleged in the complaint; that the valuation as finally fixed and determined by the board of review was the sum alleged in the complaint; that the amount of taxes charged against the lands upon the tax roll of the city for that year in accordance with the assessment was the sum alleged in the complaint; that the taxes were not paid, but were returned as delinquent and unpaid to the county treasurer; that the lands were sold by the treasurer for such unpaid taxes, with interest and lawful charges, at the regular tax sale in May, 1897; that the county became the purchaser at such sale, and was still the holder of the certificates issued upon such sale; that the assessor, in making his assessment

Brown vs. Oneida County.

of property in the city for that year, valued and assessed
the taxable property in the city, including the property de-
scribed, at the full value which could ordinarily be obtained
therefor at private sale, according to the best of his judg-
ment, and not otherwise, and that such was the general
plan and purpose of the assessor in making the assessment.
The defendant denied that the board of review changed the
valuations fixed by the assessor upon the plaintiff's lands
without hearing testimony, or without legal evidence, or
without notice, and alleged that before final determination
of the values to be fixed to the plaintiff's lands the board of
review (being informed that the assessor's valuations of the
lands were too low) gave to the plaintiff due notice that the
board contemplated the raising of the assessment, and to
appear and be heard in relation thereto; that the plaintiff
did appear pursuant to such notice, and the board did there-
upon take and hear testimony and all testimony offered in
relation thereto, including testimony offered on behalf of
the plaintiff, and, after consideration of all such testimony,
and upon and in accordance therewith, and not otherwise,
the board finally fixed and determined the valuation of the
plaintiff's lands at the sum stated, which valuation was the
full value which could ordinarily be obtained therefor at
private sale and no more, and was in proportion to the val-
uation fixed upon other property in the city, in the judg-
ment of the board; that the valuations so fixed and deter-
mined by the board of review upon the plaintiff's lands
were in fact not more than the full value which could ordi-
narily be obtained therefor at private sale, and not greater
in proportion to the actual value thereof than the values
affixed to the other taxable property in the city.    The de-
fendant also denied that the board of review, in dealing
with the assessment, acted wrongfully or arbitrarily, or with
any intention on its part to require the plaintiff to pay more
than his just proportion of the taxes to be raised in the city

Brown vs. Oneida County.

for the year 1896, or to do the plaintiff any injustice in any manner whatever.

All six cases were tried at the same time, and there is but one bill of exceptions for all of them.

At the close of the trial the court made findings of fact and conclusions of law in each of such cases, which, with the admissions in the answer, are to the effect that the plaintiff owned the premises described during 1896, and the same were liable to taxation; that they were assessed by the assessor that year at the amount stated; that such valuation so fixed by the assessor was in no case less than the actual value which could ordinarily be obtained for the same at private sale; that the board of review, ignoring the testimony taken by it, and acting solely upon impressions and information received by individual members of the board outside of and prior to the taking of such testimony, arbitrarily, unjustly, and wrongfully raised and increased such valuation, except in one case mentioned and hereinafter explained; that the percentage of taxation in the city for that year was fixed at 2.19 per cent., and that such per cent. upon the valuation of the plaintiff's lands, as so fixed by the board of review, was finally carried out against and assessed upon the same; that the plaintiff refused to pay such percentage upon the valuation so fixed by the board of review, and hence such tax was returned delinquent, and the property of the plaintiff sold thereon in May, 1897, and bid in by the defendant, and the certificates of sale issued thereon to the defendant; and the same are still held by the defendant; that all the allegations of the complaint are true, except as otherwise found; that by so assessing the plaintiff's property at the percentage mentioned upon such valuation, wrongfully, unjustly, and arbitrarily fixed by the board of review, and greatly in excess of its true valuation, the plaintiff was unlawfully required to pay considerably more than his or its just and proportionate share of the taxes of the city; that

such objection to the validity of such taxes did not affect the groundwork of the tax, nor all the property in the city, nor require a reassessment; that by paying into court the true amount of such liability, as found, the plaintiff was entitled to judgment canceling and annulling such taxes and tax certificates, and perpetually enjoining the issuing of any tax deed thereon; that upon making due proof of the payment of such just amount into court, the clerk was thereby ordered and directed to sign and enter such judgment in favor of the plaintiff, with costs; that the amount of such tax thus justly chargeable to the real estate of *W. E. Brown* in 1896, which, with collection fees added, he was thus required to pay as a condition of such relief, is $183.96; that the amount of such tax thus justly chargeable to the real estate of *Brown Bros. Lumber Company* in 1896, which, with collection fees added, it was thus required to pay as a condition of such relief, is $689.85; that the amount of such tax thus justly chargeable to the real estate of *Brown & Robbins Lumber Company* in 1896, which, with collection fees added, it was thus required to pay as a condition of such relief, is $517.39; that the amount of such tax thus justly chargeable to the several parcels of real estate of *E. O. Brown* in 1896, which, with collection fees added, he was thus required to pay as a condition of such relief, is, in the aggregate, $551.89, made up as follows: On his homestead $114.98, on his planing-mill plant $91.98, and on his sawmill plant $344.93. As to such sawmill plant the court found, in effect, that the assessor, by mistake or error of judgment and not intentionally, fixed the value thereof at $3,000 in excess of its full value which could at the time ordinarily be obtained therefor at private sale; that the board of review, by ignoring the evidence taken before it and acting solely upon impressions and information received by the individual members outside of such testimony, wrongfully and arbitrarily failed to reduce the assessor's valuation, and fixed the same at $3,000

in excess of its full and actual value for which it could, at the time, ordinarily be obtained at private sale, which was at most $15,000. The court also found that the amount of such tax thus justly chargeable to the real estate of *Rib River Lumber Company* in 1896, which, with collection fees added, it was thus required to pay as a condition of such relief, is $114.98; that the amount of such tax thus justly chargeable to the real estate of *A. W. Brown* in 1896, which, with collection fees added, he was thus required to pay as a condition of such relief, is $252.94.

The plaintiffs in such several actions, respectively, having paid into court the several amounts thus required as the conditions upon which such relief would be granted, judgment was entered, with costs, in each of such actions, canceling and annulling such taxes, tax sales, and tax certificates, and perpetually enjoining the issuing of any tax deed thereon. From each of such several judgments the defendant county appeals to this court.

As indicated, the answer concedes that the assessor of the city, in making his assessment, valued and assessed the taxable properties in the city, including those in question, "at the full value which could ordinarily be obtained therefor at private sale, according to the best of his judgment, and not otherwise." The board of review increased the valuation upon each of the eight parcels of real estate except one, and in the aggregate $17,000. The only property which the board finally allowed to remain at the valuation fixed by the assessor was the sawmill plant of *E. O. Brown*, and the court finds that by some mistake or inadvertence the assessor had fixed the value of that at $3,000 in excess of its full value, and yet the valuation of that property, as fixed by the assessor, was increased by the board of review, on its own motion and without taking any testimony, from $18,000 to $20,000; and at the same time, and on its own motion, and without taking any testimony, the board of

review increased the aggregate amount of the assessor's valuations on all of the property in question in the sum of $20,500. That occurred August 25, 1896, being fifty-seven days after the time fixed by statute for the annual meeting of the board, which was June 29, 1896. R. S. 1878, sec. 1060. The city clerk, who constituted one of the members of the board, was required to "keep an accurate record of all its proceedings." *Id.* The board was authorized to adjourn from day to day, and from time to time, upon giving notice, until it completed its business. *Id.* At a regular meeting of the board of review held October 15, 1896, some of the plaintiffs in these actions, and others, appeared before the board with their attorneys, and demanded that the assessment of the property of such taxpayers be placed at its actual valuation, and that such valuations be reduced to the actual valuations; and that they be allowed to furnish testimony before the board concerning such valuations, they, as such taxpayers, feeling aggrieved at the valuations as they then stood. The board met every day from October 15, 1896, to November 3, 1896, but heard no testimony and took no action upon such request and demand of the taxpayers. On the day and year last named the proposition to hire counsel was considered, and the defendant's attorneys herein were thereupon employed; but no testimony was taken, and no action had, until November 20, 1896, when a resolution was presented to the board of review to reconsider its action upon the real estate described in such objections, and also upon the personal property valuations of all the objecting parties, "and to proceed to hear evidence thereon," and five days afterwards the board voted to reconsider its action, and decided to take testimony. Nine days after such hearing, and after the taking of such evidence, and on December 4, 1896, the board finally fixed the valuations as indicated. Thus it appears that 150 days, or nearly five month, after the first annual meeting in June had elapsed before any evi-

Brown vs. Oneida County.

dence had been taken by or before the board, and then only after counsel had been employed on the part of the municipality.

As indicated, the answer alleges, in effect, that, the board of review having been "informed" that the assessor's valuations of such lands were too low, and before its "final determination," gave to the plaintiff due notice that the "board *contemplated* the raising of said assessment, and to appear and be heard in relation thereto; that the plaintiff did appear pursuant to said notice, and said board did thereupon take and hear testimony, and all testimony offered in relation thereto, including testimony offered on behalf of the plaintiff." Manifestly, no such notice was ever given prior to November 25, 1896, and then only by reason of the advice of counsel. Thus it is admitted that, before taking any testimony, the board, acting solely upon information or observation, "contemplated" raising the assessor's valuations. Such contemplation would seem to have been based upon the misapprehension that the board had plenary power to increase or diminish the assessor's valuations at pleasure, and without evidence. But the statute declares that "The board of review shall, when satisfied *from the evidence* taken that the assessor's valuation is too high or too low, lower or raise the same accordingly, whether the person assessed appear before them or not." R. S. 1878, sec. 1061. This statute was enacted "for the very purpose of preventing the board from arbitrarily increasing or lessening the amount of the assessment, as they could under previous legislation. It was to prevent such reduction or increase without evidence or testimony, and merely to satisfy their own notions of justice, or some opinion based, perchance, upon some casual statement made by some citizen in good faith or otherwise. The investigation might have been summary, but the determination should have been based upon evidence." *Shove v. Manitowoc,* 57 Wis. 8; *Fond du Lac W. Co. v. Fond*

*du Lac*, 82 Wis. 334, 335; *Hixon v. Eagle River*, 91 Wis. 651.

From the whole record it is apparent that the board consented to hear evidence only because they were required to do so by the statute, as advised by counsel, but that the evidence so taken was substantially disregarded, and its action taken three months before substantially confirmed. The board of review was the creature of the statute, and only had such powers as had been given to it by statute. True, its duties were *quasi*-judicial in their nature. The court had no appellate or supervisory jurisdiction to disturb or overturn its findings or determinations if it had acted in good faith and within its jurisdiction. The rule, as to the board, is substantially the same as it is in respect to the assessor. "It has often been held that discriminations in the valuation and assessment of property, arising from mistake of fact, or errors in computation or judgment on the part of assessors, do not necessarily vitiate a tax, but that an intentional disregard of law in such discrimination does." *Brauns v. Green Bay*, 55 Wis. 115, and cases there cited; *Webster-Glover L. & Mfg. Co. v. St. Croix Co.* 63 Wis. 647; *Boorman v. Juneau Co.* 76 Wis. 553; *Green Bay & M. C. Co. v. Outagamie Co.* 76 Wis. 589.

After careful consideration of the record, we are constrained to hold that the findings of the court are sustained by the evidence, and that the board did not keep within its jurisdiction, but reached its conclusions without evidence and arbitrarily, and then intentionally and wrongfully and contrary to the overwhelming weight of evidence refused to change or modify such conclusions except in the two particulars named, and such modifications were under circumstances which left the badge of bad faith and intentional wrong upon its conduct. It is true that in one part of the opinion of the trial judge it is said: "Admitting that the board acted in entire good faith, and were not actuated by any unjust or sinister motive, yet their action was illegal

Brown vs. Oneida County.

and arbitrary, and resulted injuriously to the plaintiffs." He then goes on to show that the board had, before their final action, repeatedly prejudged the case without evidence, and "was not in condition to make an unprejudiced determination;" that it was "not enough to say that the board intended to act in perfect good faith, if in fact the act done indicated the contrary;" that he acquitted "the board of any express intent to injure or wrong the plaintiffs in their action first taken, but the circumstances so developed that when final action was taken it was virtually impossible for them to consider the situation with that fairness and impartiality which should characterize the action of a tribunal exercising judicial functions." Such expressions were simply to the effect that the members of the board had not been bribed, or that, while they might have intended to act in good faith, yet their conduct indicated bad faith; that while he acquitted them of an "*express* intent to injure or wrong the plaintiffs"— that is to say, of express malice,— yet their conduct had been such that when the final action was taken they were incapable of making a fair and impartial determination. Such expressions in the opinion of the trial judge are insufficient to nullify the findings of the trial court. Certainly such conduct in a jury would not be tolerated for a moment.

The trial court properly held that the illegality found did not affect the groundwork of the tax, nor all the property in the municipality or assessment district, nor any property not involved in these suits, and hence that no reassessment was necessary. R. S. 1878, sec. 1210b. The several amounts which the court required the respective plaintiffs to pay as a condition of relief appear to have been proper.

*By the Court.*— The judgment of the circuit court in each of the several cases is affirmed.

BARDEEN, J., took no part.