STATE EX REL. VILAS, Appellant, vs. WHARTON, City Clerk, Respondent.

*March 25—April 17, 1903.*

*Taxation: Board of review: Ownership of lumber at time of assessment: Evidence: Sales: Passing of title: Contracts construed: Reversal of action of board.*

1. The agent of one to whom lumber was assessed for taxation testified before the board of review that all said lumber had been sold prior to May 1, and produced in evidence the contracts of sale. *Held*, that if the contracts were effectual to pass the title such evidence of nonownership overcame the presumption in favor of the assessment.

State ex rel. Vilas v. Wharton, 117 Wis. 558.

2. Where the evidence before the board of review as to the ownership of assessed property is conflicting, the decision of the board on that question, honestly made, is not subject to judicial review.

3. Letters and affidavits of the purchasers of property are not admissible as evidence before a board of review upon the question whether the title passed to them prior to May 1.

4. Under sec. 1061, Stats. 1898, requiring the board of review to hear and examine under oath any person who shall appear before them in relation to any assessment, and to increase or lessen the same to the true valuation, the board need not, before receiving such testimony, give notice to the persons likely to be affected thereby.

5. Written contracts of sale provided that the vendor "hereby sells and delivers to [the vendees], who hereby buy and accept the delivery of," the lumber described; that the vendees are to pay immediately, by promissory note, the purchase price according to the measurements already made by the vendor; that the insurance is to be transferred to the vendee; that the vendee is to remove the lumber within a limited period, and is to ship without aid or co-operation from the vendor; that the vendee is to take the "roof and crosser strips used in piling and covering *said* lumber;" and that the lumber sold shall be retallied by the lumber inspector, and any deficiency shall result in refund of proportion of the price paid, while any excess is to be paid for by the purchaser. *Held*, that the contracts show, *prima facie* at least, sales of specific lumber, fully identified as between the parties, and not of a specified quantity out of a larger mass, and that the title was to pass at once to the vendees.

6. Proof of actual segregation was not essential in such a case to show a transfer of the title, nor was it necessary that the method of identification should be embodied in the written contracts.

7. The dates of the several contracts, appearing on their face, were *prima facie* proof of the times of their execution.

8. It was shown by undisputed affirmative evidence before a board of review that part of a quantity of lumber assessed to certain persons did not belong to them. The board, contrary to law, allowed the assessment to stand without reduction. Upon *certiorari*, the board being no longer in existence, so that there could be no remission of the record to it with suggestion of a proper decision, the action of the board in retaining said assessment upon the roll is wholly reversed.

APPEAL from a judgment of the circuit court for Ashland county: JAMES O'NEILL, Judge. *Reversed.*

In the year 1901 the city of Ashland assessed to "Knight & Vilas, of East End Mill, 9,350,000 feet of lumber, $112,200." On August 27th Mr. Knight, as agent of *Mr. Vilas,* appeared before the board of review, and made an unsworn statement to the effect that all lumber which they or either of them had on those docks was sold prior to the 1st of May by certain written contracts, which he offered for the inspection of the board. He made certain reiterations of these general statements more in detail.     On August 30th Mr. Knight again appeared, and asked to be sworn as a witness, and declared that all the previous statements made by him and "entered on the minutes on pages 10, 11, and 12" were true.     In making the return the city clerk has failed to indicate what of such statements were on the designated pages. However, on August 30th, Mr. Knight went on to state that Knight & Vilas had no lumber on May 1st except what had been previously handed in and assessed to Knight personally, and that the lumber on the East End dock, which had been assessed to Knight & Vilas, was all represented in the written contracts of sale which he offered in evidence. On September 3d, without notice of their intent so to do, and in the absence of the relator or any representative of his, the board took the sworn testimony of two or three witnesses (amongst others, of one Dalton) as to the existence of some logs which had not been assessed at all, and of Wiggins, a lumber inspector at Ashland, who testified as to the lot of lumber in controversy.     The testimony is perhaps a trifle ambiguous as to the total amount of lumber on the dock on May 1st.     It is to the general effect that Knight & Vilas had a total of about 11,000,000 feet, but seemingly supports the assessment by indicating that only about 9,000,000 had come into existence as lumber by the 1st of May, the rest being the result of later sawing.     He supplemented the written contracts offered in

evidence by Colonel Knight, proving that the contracts covering about 4,800,000 feet had been negotiated by him, and were executed completely at dates prior to May 1st. He testified positively that two of the contracts of sale, covering about 2,260,000 feet of lumber, were not executed until after May 1st. There were other sale contracts, aggregating approximately 2,000,000, in the making of which he did not participate, and as to the time of which there was no parol evidence, but which bore date April 29, 1901. There was further received in evidence at this time a number of letters and one affidavit from certain purchasers of that lumber, denying that they held it subject to taxation on May 1st. The board refused the relator's application, made by Knight, to reduce or cancel the assessment originally made. They added to the assessment $9,000 worth of logs.

Writ of *certiorari* being issued from the circuit court for Ashland county, and return having been made, the court reversed the action of the board in adding the $9,000 for logs, and affirmed it in refusing to set aside the assessment of the lumber, and adjudged that "the assessed valuation of the personal property of the relator and John H. Knight is hereby fixed at $112,200." From that judgment the relator appeals.

*R. Sleight,* for the appellant.

For the respondent there was a brief by *F. J. Colignon,* attorney, and *Dillon & Colignon,* of counsel, and oral argument by *F. J. Colignon.*

DODGE, J. The return perhaps leaves uncertain what of the statements made by the relator's agent, Knight, on August 27th, were sworn to and so made evidence on August 30th. That, however, is not very material, for he testified on the latter date that all the assessed lumber had been sold before May 1st, and produced in evidence the contracts of sale, so that, if those contracts should be construed as effectual to pass title, there was evidence before the board to

establish nonownership of such lumber by the relator on that day. That evidence was surely direct and applied unambiguously to the lumber assessed. It fully satisfied the requirement of the statute as declared in *State ex rel. Giroux v. Lien,* 108 Wis. 316, 84 N. W. 422, and overcame the *prima facie* presumption in favor of the original assessment. If such evidence stood alone, it was the duty of the board of review to act upon it, and failure so to do would be contrary to law, and reversible upon *certiorari. Shove v. Manitowoc,* 57 Wis. 5, 14 N. W. 829; *State ex rel. Heller v. Lawler,* 103 Wis. 460, 79 N. W. 777. If, however, there was evidence in conflict therewith, the board's jurisdiction and authority included the weighing of all evidence and deciding thereon according to their judgment, and no mistake or error in so doing, made honestly, could warrant judicial review of their decision. *State ex rel. Smith v. Gaylord,* 73 Wis. 306, 310, 41 N. W. 518; *Brown v. Oneida Co.* 103 Wis. 149, 159, 79 N. W. 216.

The record discloses two classes of other evidence: First, certain letters and affidavits from those to whom the lumber was sold; and, secondly, the sworn testimony of witnesses taken before the board September 3d in absence of, and without notice to, the relator or his representative. The first class obviously is not evidence, under the rule of *State ex rel. Giroux v. Lien,* 112 Wis. 282, 87 N. W. 1113, and could not justify disregard of relator's evidence. As to the second class, a novel question is raised by appellant, who contends that the board cannot so receive evidence without at least giving an objector notice and opportunity to be present. The statute places no such restriction on the board expressly, and the implication thereof must be at least clear and necessary to warrant the court in importing it into the statute. These boards, while they act judicially, are not courts, but are part of the machinery of taxation, wholly within the power of the legislature to create and regulate. *State ex rel. Ellis v.*

*Thorne,* 112 Wis. 81, 87 N. W. 797. The fact that the time of sitting of such board is fixed by law is a sufficient notice to all persons to constitute due process of law for tax proceedings. The statute (sec. 1061, Stats. 1898) requires the board to hear and examine under oath any person who shall appear before them in relation to any assessment, and to increase or lessen the same to the true valuation. In all this there is no suggestion that, before hearing such testimony, they must give notice to any person likely to be affected thereby. That the omission to so provide was not due to oversight of legislators is made obvious by the further requirement that they shall not finally raise any assessment without giving notice of such intention. Since that intention cannot well be formed until the evidence has been heard, there would seem to be here a pretty clear implication that evidence might be taken before the giving of the notice. The decisions of the courts that boards of review cannot change assessments except upon sworn evidence, nor raise them without notice, are not based on any general rules of public policy or justice, but upon express provisions of the statute. They are entirely consistent with the view that the board might do either but for legislative restriction. *McIntyre v. White Creek,* 43 Wis. 620. Many considerations might well be suggested why the legislature should forbear to burden the voluminous and hasty business of these boards with such a restriction as now contended for, but it must suffice as a reason for the courts that it has forborne. We cannot find, by implication or otherwise, that the board of review was forbidden to receive or consider the evidence of witnesses without notice to relator. The only previous intimations in former cases are in harmony with that view. Thus, both in *Shove v. Manitowoc,* 57 Wis. 8, 14 N. W. 829, and *Brown v. Oneida Co.* 103 Wis. 158, 79 N. W. 216, it is said that the board may proceed summarily in taking the evidence. The testimony of these witnesses being "evidence," then, and

proper for consideration by the board, served to support the
fact that the lumber in dispute, being that piled on a certain
dock, aggregated May 1st about 9,000,000 feet. It confirmed
Knight's testimony as to sales before that date of about.
4,800,000 feet by certain of the contracts put in evidence.
It left Knight undisputed as to sales of about 2,000,000 feet
by certain other contracts dated prior to May 1st. As to
about 2,650,000 feet, however, sold by two contracts, the tes-
timony of one Wiggins squarely contradicted Knight, and was
to the effect that such sales were not consummated until May
10th and 20th, respectively.

This situation of the record presents, as the next question,
the construction and effect of the written contracts as to the
passing of title of the lumber mentioned in them. As that
question is resolved one way or the other, they either confirm
or contradict Knight's testimony as to the ownership of much
of the lumber. The question when title of personal property
passes from seller to buyer is often one of much doubt and
nicety, especially when the property is of such character and
so situated as to be incapable of physical tradition from one
to the other. Since bargain and sale is the most frequent
form of business transaction, it is not surprising that the
question suggested should have been among those most often
considered by courts, and therefore elucidated or clouded by
great variety of distinctions and refinements. The ultimate
rule to be deduced from all the authorities is, however, the
reasonable one, namely, that, when neither the statute of
frauds nor rights of creditors are involved, the title passes
when the parties intend it to. Upon analysis of the many de-
cisions and *dicta* declaring the necessity of one or another
circumstance, or the prohibitive effect of certain other facts
or conditions, it will be found that only rules of evidence are
promulgated, and that certain facts, or the absence of others,
are held to confirm or refute the inference, as a fact, of an
intent that title shall pass at any given stage of the transac-

tion. A few citations will suffice. *Hatch v. Oil Co.* 100 U. S. 124, 131; *McElwee v. Metropolitan L. Co.* 69 Fed. 302; *Wilkinson v. Holiday,* 33 Mich. 386; *Iron Cliffs Co. v. Buhl,* 42 Mich. 86, 3 N. W. 269; *Morgan v. King,* 28 W. Va. 1; *Russell v. Carrington,* 42 N. Y. 118; *Riddle v. Varnum,* 20 Pick. 280; *Pike v. Vaughn,* 39 Wis. 499; *Thayer v. Davis,* 75 Wis. 205, 208, 43 N. W. 902; *Upham Mfg. Co. v. Sanger,* 80 Wis. 34, 41, 49 N. W. 28. As in the case of all express written contracts, the evidentiary cogency, as, indeed, the admissibility of collateral circumstances, subsequent conduct, and the like, varies according to the degree of ambiguity which lurks in the words of the agreement. If in them there be no uncertainty, no aid is needed or can be received from other sources. Here, the contracts being in writing, their construction from the writings themselves is the first consideration. Looking, then, at these instruments, we find words used which apparently express with all the certainty possible the intention that title should pass immediately upon signature. The vendor "hereby sells and delivers to [vendees], who hereby buy and accept the delivery of," the specified lumber. Certain other parts of the contracts are confirmatory of such an intention and quite inconsistent with the existence of any idea that ownership remained in the vendor. Thus the vendee is to immediately pay, by promissory note, the price of the lumber according to the measurements already made by the vendor; the insurance which the vendor already has on the lumber sold is to be transferred to the vendee; and the *vendee* is required to remove the lumber within a limited period. From the portions of the writing thus referred to seems to result very clearly an inference of intention that the title should at once pass. To resist that inference there is but one circumstance which is at all worthy of consideration, and that is the fact, which probably is made to appear by comparison of all the contracts, that some of the individual sales did not convey all the lum-

ber of the specified size and grade which the vendor had on
the docks. From this respondent argues, and the court below
concluded, that each sale was not of any specific lumber, but
of a specified quantity out of a larger mass. Such circum-
stance has been held sufficient to overcome very clear words
in a contract for sale of a few out of many units without
designating or segregating those sold, especially where the
units are distinguishable from each other, as in case of horses
or cattle. In such case it is argued that the parties cannot, by
any possibility, have intended to transfer the title to any par-
ticular horse, since they have not contracted for the sale of
any particular one. A different doctrine is sustained by
many well-considered authorities in the case of sale of part
of a mass of some commodity of which the particles or units
are not distinguishable one from another; such as inspected
grain in store, oil in tanks, and the like. *Whitehouse v.
Frost,* 12 East, 614; *Young v. Matthews,* L. R. 2 C. P. 127;
*Jackson v. Anderson,* 4 Taunt. 24; *Crofoot v. Bennett,* 2
N. Y. 258; *Kimberly v. Patchin,* 19 N. Y. 330; *Russell v.
Carrington,* 42 N. Y. 118. As to such property it is held
there may well exist intent to transfer title to the number of
bushels or gallons sold, although they are not measured out
and separated from the mass. This doctrine has not been ap-
plied to graded lumber in any case called to our attention,
nor is it necessary to decide as to its applicability here, for
we are satisfied that the contracts show, *prima facie* at least,
sales of specific lumber which, to the knowledge of the par-
ties, was defined and distinguishable from that not sold.
The provisions in the contract that delivery is accepted; that
the vendee is to ship without aid or co-operation from vendor;
that the vendee is to take the "roof and crosser strips used in
piling and covering *said* lumber"—all these indicate that the
parties had in mind some particular lumber which the vendee
could distinguish and load on his vessels. Especially con-
vincing, however, is the provision that the lumber sold shall

be retallied by the lumber inspector, and any deficiency shall result in refund of proportion of the price paid, while any-excess is to be paid for by purchaser. This is utterly inconsistent with the sale of merely a defined quantity out of a larger mass. In such a transaction there could be neither excess nor deficiency, for the purchaser would merely take enough to satisfy his contract and then stop. True, no individual contract declares how the lumber covered by it is to be distinguished from any other lumber of same grade and dimensions, but neither does any contract on its face show that there is any other lumber with which that described in it can be confused. The existence of ambiguity in that respect can be made to appear only by extrinsic evidence, to which, therefore, resort may also be had to remove such ambiguity and ascertain the property to which the contract applies. *Sargeant v. Solberg,* 22 Wis. 132; *Brittingham & H. L. Co. v. Manson,* 108 Wis. 221, 84 N. W. 183; 2 Jones, Ev. §§ 455, 479. If, as the writings clearly suggest, the parties to each contract dealt with reference to specified lumber, fully identified as between them, the full efficacy of the transfer would not be averted because the method of identification was not embodied in the writing. The absence of such specification would be merely a circumstance having some weight in deciding as to the intent. It is not of sufficient weight to overcome the very clear evidence of intent to sell ascertained and identified lumber, contained in these contracts. The intent appearing *prima facie,* as we find it did, the contracts proved the transfer of title, unless their *prima facie* effect was overcome by proof negativing segregation or identification of the property. At this point in the reasoning, the trial court erred in holding that, although a writing on its face showed the intent to convey identified property, it still could not suffice unless further proof of actual segregation were presented. Upon this error rests the final conclusion embodied in the judgment that these several contracts did not prove transfer

of title as of their respective dates of execution, and therefore that relator's ownership was not shown to have terminated.

Another error apparent in the written decision filed by the trial court consists in the declaration that there was no proof that the contracts of sale were executed or became complete prior to May 1st. The dates of the several instruments appearing on their face were sufficient *prima facie* proof of the times of their execution, but as to some 4,800,000 feet of lumber the oral testimony of Wiggins confirmed the written dates.

From what has already been said, our conclusion is obvious that there was *undisputed* affirmative evidence that of the 9,350,000 feet of lumber found on the East End Mill dock on May 1st and assessed to Knight & Vilas approximately 6,800,000 feet had been sold and did not belong to them; hence that it was a breach of the statutory duty and jurisdiction of the board of review to refuse to act upon that evidence and to strike out of the assessment roll at least so much of the assailed assessment. Their action in that regard, as well as in adding other property, should have been reversed. If the board of review had decided to reduce the assessment in question to approximately 2,650,000 feet, the present record might have supported them in retaining that amount. This they did not do, however; on the contrary, they made a decision contrary to law, and which cannot be allowed to stand. The board of review no longer being in existence, there can be no remission of the record to them with suggestion of a proper decision. The court has no choice, therefore, but to wholly reverse and set for naught the action of the board of review in retaining in the roll the assessment of $112,200 on lumber against the relator.

A suggestion is made by respondent that the lumber might, under the law, have been assessed to relator or to Knight & Vilas as being agents in charge or possession, under sec. 1044, Stats. 1898. We, however, find nothing in the record to sup-

port such theory.   We have already pointed out that the evidence negatived their possession by proving delivery to the purchasers, but the record is also barren of evidence tending in any respect to show that relator or Knight & Vilas were in any wise in charge of the lumber or had any duty towards its new owners in relation thereto.   Some of these circumstances are certainly necessary to bring one under the clause of the statute last mentioned, as they did in the case cited by respondent.   *Merrill v. Champagne L. Co.* 75 Wis. 142, 43 N. W. 653.

*By the Court.*—Judgment reversed, and cause remanded with directions to render judgment reversing entirely the action of the board of review.