ROBERTS and another, Appellants, vs. McWATTY, Sheriff, and another, Respondents.

*December 15, 1904—January 10, 1905.*

*Sales: When title passes: Instructions to jury: Evidence.*

1. Whether or not title to a stock of goods sold has vested in the vendees must be ascertained from the terms of the agreement, if the phraseology employed clearly expresses it; but if it cannot be so ascertained, then resort must be had to the conduct of the parties as explained by commonly accepted usages in dealing with the subject-matter.

2. On the exchange of a stock of goods for lands, the written contract was not sufficiently explicit in its terms to declare the intention of the parties as to when title to the goods was to pass. In submitting this question to the jury, the court instructed them: "When anything is to be done by one who sells, or by the mutual concurrence of both parties, for ascertaining the price of goods, as by weighing, testing, or measuring them, or there is something indicating an intention to postpone the transfer of the property until the fulfillment of any specific conditions, the performance of such conditions is presumed to be a condition precedent to the transfer of the title to the property, and in *such case the title does not pass until such conditions have been performed.*" *Held*, that such instruction was erroneous in that it amounted to a direction that, if any of the conditions enumerated in the instruction were found to exist, then it was *conclusively* presumed that title did not pass until the conditions had been performed.

3. In such case, proof of such condition is received and submitted to ascertain whether the parties intended that title should pass when the agreement to sell was made, or at some subsequent stage of the transaction. Language in *Smith v. Wisconsin I. Co.* 114 Wis. 151, explained.

4. An instruction to the jury, in effect, that they must weigh and consider much, if not most, of the testimony that has been introduced, criticised, though *held* not so indefinite as to constitute grounds for reversal.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge.    *Reversed.*

In 1903 Romanzo Parks and John Parks were engaged in business at Middleton, Dane county, Wisconsin. They owned and had in their possession at this place a stock of hardware. They had engaged a Mr. Gray to secure a purchaser of the stock in bulk, or an exchange thereof for other property. Plaintiffs owned a tract of real estate in Price county. They and the Parks brothers negotiated for an exchange of properties, resulting in the making of a contract on June 26, 1903, whereby plaintiffs, in consideration of $5,600, to be paid them by R. Parks and J. Parks in the manner specified in the contract, did agree to and did sell them this real estate, bargaining and agreeing to convey a good title, free and clear from incumbrances and liens. It was further agreed as follows:

"In consideration of the foregoing agreement [R. Parks and J. Parks] hereby sell, assign, transfer and convey unto [plaintiffs] as part consideration hereof, a stock of hardware merchandise of good title and clear of lien or incumbrance, . . . the same to be applied on the purchase price, at the invoice price to be fixed by an invoice to be made commencing Monday, June 29, 1903, and completed as soon as possible, said stock to be invoiced under the supervision of some person expert in hardware prices to be selected by [plaintiffs], the balance of the purchase price to be paid as soon as the invoice is completed and not later than July 1st, 1903."

It was further agreed that the stock of hardware should not exceed in amount the sum of $2,800; that plaintiffs assumed the lease of the store building wherein the stock was kept for two months from July 1, 1903, and that the lease should be canceled by agreement with the owner before July

1, 1903, plaintiffs to pay two thirds and the Parks brothers one third of the cost of such cancellation; that any commission ä ä Mr. Gray for bringing the parties to this exchange of properties together was to be paid by them in the same proportion, respectively, as the cost of cancelling the lease; and that plaintiffs were to and did pay Mr. Parks the expense of the trip to inspect the real estate. A Mr. Thorsness was selected by plaintiffs as expert in fixing the invoice price of the hardware. The taking of the inventory was commenced on the morning of June 29th, and continued to the evening of June 30th; Mr. Thorsness, the plaintiff *Roberts*, and the two Parks brothers taking part. On the following day, July 1st, Romanzo Parks took no part. The other parties attempted to continue invoicing, but disagreed as to the invoice price of articles, and did not finish invoicing on this day. The invoicing was then suspended; plaintiffs claiming that it was agreed to be resumed on the following Tuesday, July 7th. The other conditions of the contract as to the payment of rent and cancellation of the lease of the store buildng, the adjustment of Mr. Gray's commission, the furnishing of the abstract and delivery of a deed of the real estate, had not been executed at the time of the levy made by defendants. Plaintiffs, as the alleged owners of this stock of hardware under this contract, bring this action to recover the value of the goods so taken by defendants under an execution levy against Parks brothers. The defendants, acting in the capacity of sheriff, claim the right to seize this merchandise as the property of the Parks brothers for the benefit of their creditors, and assert that the Parks brothers are the owners thereof, and that the attempted exchange of this stock of hardware is fraudulent and void as to the creditors of Parks brothers. The action was tried before the court and a jury. A special verdict was rendered, finding that no fraud as to creditors of the Parks brothers was practiced by the parties in making the above contract; that the title to the stock did

not pass to plaintiffs when the contract was executed; and the title was in the Parks brothers at the time of the execution levy on July 11, 1903. Upon this verdict the court awarded judgment in defendants' favor, dismissing the action, and for costs. This is an appeal from such judgment.

*R. F. Hamilton*, attorney, and *Rufus B. Smith*, of counsel, for the appellants.

For the respondents there was a brief by *Bird & Gilman*, and oral argument by *Geo. W. Bird* and *F. W. Hall*.

SIEBECKER, J. The jury found that the transaction between plaintiffs and the Parks brothers was without fraud as to creditors. This leads to the inquiry: What effect is to be given the written contract between plaintiffs and the Parks brothers in reference to the passing of title of the stock of hardware covered by it? Whether or not the title to the goods sold vested in the vendees under circumstances like these depends upon the intention of the parties. This fact must be ascertained from the terms of the agreement, if the phraseology employed clearly expresses it; but, if it cannot be so ascertained, then resort must be had to the conduct of the parties as explained by commonly accepted usages in dealing with the subject-matter. As stated in *State ex rel. Vilas v. Wharton*, 117 Wis. 558, 94 N. W. 359:

"The ultimate rule to be deduced from all the authorities is, however, the reasonable one, namely, that when neither the statute of frauds nor rights of creditors are involved, the title passes when the parties intend it to," and "that certain facts, or the absence of others, are held to confirm or refute the inference, as a fact, of an intent that title pass at any given state of the transaction;" citing a number of cases.

The court held that the contract on its face was not sufficiently explicit in its terms to declare the intention of the parties as to when title to the goods was to pass, and therefore resorted to proof of the facts and circumstances of the transaction to ascertain the intent of the parties upon this

subject. This ruling is correct, since the contract fails to disclose the intent when title to the stock of hardware should pass. In submitting this question for determination to the jury, the court instructed them as follows:

"When anything is to be done by one who sells, or by the mutual concurrence of both parties, for ascertaining the price of goods, as by weighing, testing, or measuring them, or there is something indicating an intention to postpone the transfer of the property until the fulfillment of any specific conditions, the performance of such conditions is presumed to be a condition precedent to the transfer of the title to the property, and in *such case the title does not pass until such conditions have been performed.*"

This instruction amounts to a direction that, if any of the conditions enumerated in the instruction were found to exist, then it is *conclusively* presumed that title did not pass until the conditions have been performed. This is not the legal effect of proof of such conditions. Proof of them is received and submitted to ascertain whether the parties intended that title should pass when the agreement to sell was made, or at some subsequent stage of the transaction. The instruction was evidently framed with a view to incorporating the rule expressed in the decision of *Smith v. Wisconsin I. Co.* 114 Wis. 151, 89 N. W. 829, wherein it is stated: "The performance of these conditions is presumed to be a condition precedent to the transfer of the property." These terms should not be read to declare that the existence of such conditions conclusively prove that title did not pass until they had been performed.

Another exception is urged to the following instruction: "In answering this question [6] you must weigh and consider much, if not most, of the testimony that has been introduced"—as misleading to the jury in permitting them to arbitrarily reject testimony which might be material. The instruction may not be so indefinite as to constitute reversible error, but we deem it best to call attention to it, so that the

uncertainty of its application to the evidence may be cor-
rected. Since a new trial must be ordered, we do not deem it
necessary to discuss other exceptions argued, because they
will probably not arise upon another trial.

The case seems to have been tried and finally decided upon
the theory that a determination of the question of fraud, and
when title to this stock of hardware passed, decided all the
issues between the parties. We are not advised by anything
in the record whether counsel for the respective parties
brought to the court's attention or whether the court passed
upon the right of the defendants to seize this property for the
benefit of the creditors of the Parks brothers, and take it
from those in possession, while the invoice was being taken
with a view to carrying out the contract of sale. If plaintiffs
were in possession, either solely or jointly with the Parks
brothers, the question as to what rights inhere in such posses-
sion may necessarily require determination to make a judg-
ment conclusive as to the rights of all interested parties.

*By the Court.*—Judgment is reversed, and the cause is
remanded for a new trial.

