WILSON VS. HELLER, Town Clerk, etc.

CERTIORARI. (1) *Writ may be issued by circuit judge in vacation.* (2) *Without notice.* (3) *Laches in applying for it.* (4-6) *Proceedings of town board of review reversed on such writ.*

1. Sec. 4, ch. 116, R. S., declares that the circuit courts in term time, and the judges thereof in vacation " shall have power to award, throughout the state, returnable in the proper county, writs of injunction, *ne exeat*, and all other writs and process which may be necessary to the due execution of the powers with which they are vested." *Held*, that the circuit judge has power to issue the writ of *certiorari* in vacation.

2. It is the practice in this state to allow writs of *certiorari* without notice to the opposite party; though the court or judge *may*, at discretion, require notice to be given, and permit the opposite party to be heard, before granting the writ.

3. The writ was granted in June, 1872, to review a decision of a " board of review " made in July, 1870. Plaintiff's affidavits show that by ad-

vice of his counsel he first commenced two suits in equity to restrain the collection of the tax complained of, one against the town treasurer and the other against the county treasurer, and that those suits were dismissed before a trial upon the merits. *Held*, (without laying down any general rule), that under the circumstances of this case there was no error in refusing to quash the writ on the ground of plaintiff's *laches* in not sooner applying for it.

4. Under the statutes in force in 1870, the town board of review had no authority to change the assessed value of property except *upon evidence* (*Mil. Iron Co. v. Schubel*, 29 Wis., 444; *Phillips v. Stevens Point*, 25 id., 594); and where the valuation of plaintiff's property was raised in that year by the board in opposition to all the evidence given before them, their decision was properly reversed on *certiorari*.

5. It is possible that ch. 166, Laws of 1871, now authorizes the board of review to raise the valuation of property when they deem it too low, even against the evidence given before them. Per COLE, J.

6. If satisfied by the evidence adduced at the hearing of a motion to quash the writ, that plaintiff would pay no more than his fair proportion of the taxes if the valuation fixed by the board of review were adhered to, the court would be inclined to dismiss the writ, notwithstanding the fact that the board raised the assessor's valuation without evidence. But in this case the court affirms the decision at the circuit, setting aside such increased valuation.

APPEAL from the Circuit Court for *Dunn* County.

In June, 1872, the plaintiff, without notice to the defendant, applied to the judge of said court, at chambers, for a common law *certiorari*, addressed to the defendant, and returnable at the October term of said court, to bring up for review the acts of the board of review of the town of Menomonee in said county, relative to the valuation of certain real property of the plaintiff situate in said town. The writ was granted; and, at the October term of the court, a motion to quash it was denied; and, after a hearing upon the merits, the court made an order reversing the proceedings of the board of review in the matter complained of. From this order the defendant appealed.

It appears from plaintiff's affidavit for the writ, and defendant's return thereto, that the assessor of the town of Menomonee, in 1870, assessed four parcels of land belonging to plaintiff in

said town, containing respectively twenty, thirty, twenty, and thirty-five acres, at $3,000, $4,500, $4,000, and $3,000, respectively; that plaintiff applied to the town board of review for a reduction of these valuations to $1,800, $2,000, $1,800, and $1,000, respectively, but the board refused to make any reduction whatever in the valuation of any one of said parcels; that the only evidence as to the value of said lands, shown by the records of the board to have been before it at the time when such decision was made, was the assessment roll of said town for the year 1869, and the testimony of the plaintiff himself; that upon the said assessment roll of 1869, the parcels of land in question were valued by the assessor, respectively, at $1,600, $2,000, $3,000, and $2,000, and these valuations, as "equalized" by the board of review for that year, were fixed at $1,600, $1,500, $2,250, and $1,250, respectively; and that the plaintiff's testimony tended to show that said lands were vacant and unproductive, and the values of the several parcels not greater than those which he had petitioned to have affixed to them.

The affidavit of the defendant, in support of his motion to quash, states the following facts: After the tax roll and warrant for 1870 were delivered to the treasurer of said town of Menomonee, plaintiff commenced a suit in equity in said court against the town and its treasurer, to restrain the collection of the tax assessed against said parcels of land, upon the ground of fraud in the assessor and a majority of the town board of review in making unjust discrimination against his property in order to make him pay more than his just share of the tax of said town; and he obtained a temporary injunction restraining the collection of the tax during the pendency of such action. An answer was filed in said suit, denying the fraud, and alleging that the valuation fixed upon the property in question was not higher than its true value, etc. Upon the issues thus made the defendants in that suit prepared for trial at the March term of said court, 1871; but during said term, plaintiff, of

his own motion, discontinued said suit. Afterwards, and after the return of said lands as delinquent, plaintiff commenced another suit against the county of Dunn and its treasurer, and the treasurer of said town, to restrain the sale of the same premises for the nonpayment of said tax. An issue of fact was made up in this action substantially the same as in the first suit above named, and defendants noticed the cause for trial at the September term, 1871; but it was continued over said term on plaintiff's motion. It was again placed on the calendar for trial at the April term, 1872, but was discontinued during that term. Afterwards, in July, 1872, plaintiff commenced a third suit for the same object as the one last above named, making the same defendants; in which third suit an issue of fact was made up, substantially like those above described, and said suit is now pending and undetermined. In each of the two suits last named plaintiff obtained a temporary injunction restraining the sale of said property during the pendency of the suit.

The motion to quash was also accompanied by affidavits designed to show that the lands in question were worth in cash, at the time of the assessment, the sums at which they were valued, and in particular to show the prices which they would have commanded if they had been subdivided into village lots, and a plat thereof had been made and recorded.

The plaintiff's counter affidavits, besides contradicting defendant's affidavits in respect to the value of the lands, contained the following statements in regard to the several suits in equity commenced by the plaintiff: 1. When the first of said suits was ready for trial, one of defendant's attorneys stated to plaintiff's attorneys that he thought it for the best interests of all the parties, that the same should be discontinued, and the matters in issue brought before the board of supervisors of the county to be adjudicated, and that if plaintiff would take this course defendants would consent to the discontinuance without payment of any costs to them. The action was thereupon dis-

continued by mutual consent, without costs. At the first meet-ing of said county board of supervisors thereafter, plaintiff's attorneys appeared in his behalf for the purpose of bringing said matters before the board ; but said board, being advised that they had no authority to act in said matters, refused to have the same brought before them. 2. As to the second ac-tion (against the *county* and its treasurer, and the *town* treas-urer), at the time of its commencement another action of the same character, based upon precisely similar allegations, was commenced by one Tainter, a copartner of the plaintiff, against the same defendants, to restrain the sale of Tainter's property in said town of Menomonee for taxes levied in the same year (1870). Defendants answered the complaints in said actions, denying the allegations of fraud contained therein ; and, before the actions were brought to trial, moved, in the action by Taint-er, to dissolve the injunction which had been obtained therein. This motion was heard upon the pleadings in that action, and was denied, and said defendants thereupon appealed from the order to the supreme court, where, at the January term, 1872, said order was reversed and the cause remanded to the circuit court with instructions to grant the motion. (See *Tainter v. Lucas*, 29 Wis., 375). Thereupon plaintiff's counsel, believing, from the decision of the court in that case, that the relief sought by plaintiff in his said action could not be obtained thereby, and could be obtained by means of a writ of *certiorari*, so ad-vised the plaintiff ; and, in pursuance of their advice, plaintiff discontinued said action at the next term of the circuit court. 3. After the writ of *certiorari* herein had been issued, and served upon the defendant, the county treasurer had said lands advertised for sale, and threatened to sell them for the taxes here in dispute, during the pendency of the present action ; and thereupon plaintiff, to prevent a cloud upon his title, com-menced the *third* action above named, to restrain such sale.

After the filing of the affidavits above described, and after hearing counsel, the circuit court refused to set aside the writ

of *certiorari*, and ordered that "the proceedings and judgment of the board of review" be reversed. From this order the defendant appealed.

*Finches, Lynde & Miller*, for appellant, argued that the writ should not have been allowed without notice (6 Mass., 72; 21 Barb., 665); that it could not be allowed by the judge at chambers (*Gardner v. Comm'rs*, 10 How. Pr., 181; *Starr v. Trustees*, 6 Wend., 568; *Comstock v. Porter*, 5 id., 98; *Matter of Lantis*, 9 Mich., 326); that the writ should also have been denied for plaintiff's *laches* in applying for it (63 N. C., 250; *Elmendorf v. Mayor etc.*, 25 Wend., 697, citing *People v. Sup'rs etc.*, 15 id., 198; *Matter of Lantis*, 9 Mich., 324; *Rutland v. County Comm'rs*, 20 Pick., 79); that the excuse offered for the delay is not sufficient (*Gillam v. Looney*, 1 Heisk., 319; *McDowell v. Keller*, id., 449); that the writ is one which it is discretionary with the court to grant or refuse (*Stuart v. Hall*, 2 Overt., 179; *People v. Sup'rs*, *Elmendorf v. Mayor* and *Matter of Lantis, supra; People v. Stilwell*, 19 N. Y., 531; *Farrell v. Taylor*, 12 Mich., 113; *Drowne v. Stimpson*, 2 Mass., 445; *Adams, Petitioner*, 4 Pick., 32; *Cobb v. Lucas*, 15 id., 3; 20 id., 77; *Hancock v. Boston*, 1 Met., 123); that it is proper, by affidavits and other proofs, to show any valid reason why the writ should not be granted, or why, if granted, it should be quashed (*People v. Sup'rs*, 1 Hill, 197; *Jackson v. The People*, 9 Mich., 120; *Rutland v. Co. Comm'rs*, 20 Pick., 78); and that the affidavits read for defendant in this case show that no wrong was done the plaintiff by the board of review. They further argued that the plaintiff, having filed two bills in equity, and voluntarily dismissed them, and having instituted a third suit in equity, which is still pending, had made his election of remedies, and could not afterwards elect another and far more technical remedy. *Stuart v. Hall*, 2 Overt., 179.

*H. A. Wilson*, with *P. L. Spooner*, of counsel, for respondent.

1. The judge at chambers had power to award the writ. R. S., ch. 116, sec. 4; *Hurlbut v. Wilcox*, 19 Wis., 419. 2. No-

·tice of the application for the writ was not necessary. *People v. Rochester*, 21 Barb., 656; *Matter of Woodbine St.*, 17 Abb. Pr. R., 112; *Gardner v. Comm'rs*, 10 How. Pr. R., 181. 3. No time is fixed by the statutes of this state, within which the writ must be applied for. In analogy to the statute limiting the time within which a writ of error may be sued out, it is probable that this writ would be allowed at any time within two years. The writ in this case was issued within that time. Counsel here examined and distinguished the cases of *Love v. Hall*, 3 Yerg., 408; *Tipton v. Anderson*, 8 id., 223; *Lantis and others*, 9 Mich., 324; *Farrell v. Taylor*, 12 id., 114; *People v. Reddy*, id., 539. 4. The petition states a good and sufficient ground for issuing the writ. *Milwaukee Iron Co. v. Schubel*, 29 Wis., 444.

COLE, J. This is a common law writ of *certiorari*, brought to review the action of the board of review of the town of Menomonee in fixing the valuation of certain real estate belonging to the plaintiff for the purpose of taxation. The writ was allowed by the circuit judge at chambers June 15, 1872; and the valuation of the property was fixed by the board at its annual session in July, 1870. Before making return to the writ, the defendant moved to quash the same upon various grounds. A return was then made, and the motion to quash was submitted with the case upon the merits. The circuit court refused to quash the writ, and made an order reversing the action of the board of review in the matter. The correctness of this order is the question we have to consider on this appeal.

In the first place it is insisted on the part of the defendant, that the writ could only issue on an application to the *court*, and that the circuit judge in vacation had no authority to allow it. Whatever may have been the practice at common law, we think our statute clearly confers the power upon the circuit judges to allow the writ in vacation. Section 4, ch. 116, R. S., provides that the circuit "courts in term time, and the

judges thereof in vacation, shall have power to award, throughout this state, returnable in the proper county, writs of injunction, *ne exeat*, and all other writs and process which may be necessary to the due execution of the powers with which they are vested." This language is very comprehensive, and gave the circuit judge ample power to allow the writ in vacation. In the case of *Owens v. The State*, 27 Wis., 600, this court held that a county judge might allow the writ, by virtue of a provision which did not more clearly confer the power to allow it than the section above cited.

But another objection taken to the writ is, that *notice* should have been given of the application, and, since this was not done, the writ was irregularly issued. This position, we think, is clearly untenable. We agree fully with the remark made by the counsel for the plaintiff upon this point, that it has been the uniform practice of the circuit courts, so far as we know, as it certainly has been of this court, to issue the writ without notice. Doubtless the court or judge might and would require notice to be given in a case where there was reason to suppose any great public inconvenience or injurious consequences would follow upon granting the writ without a full hearing upon the application. A case might easily be imagined, where it would be very proper that the adverse party should have notice of the application and an opportunity to be heard in opposition to granting the writ. But this was not such a case. And, as we think the power of the circuit judge to allow it is indisputable, at most it can only be said the judge might, in his discretion, have required notice of the application to be given. We have examined all the authorities to which we were referred by counsel on both sides upon this point, but find nothing in them calling for any comment. It is sufficient to say that the practice in this state is to allow the writ without notice, and we see no reason for holding that notice is absolutely essential.

A still further objection is, that the writ should have been

quashed because it appeared that the plaintiff had been guilty of *laches* in not suing it out at an earlier day. It is not, however, claimed by the counsel for the defendant, that there is any time fixed by our statute, within which the writ must be sued out. The authorities say that it is not a writ which a party may demand *ex debito justitiæ*, but that it is a discretionary writ, only granted when necessary to promote substantial justice. The counsel for the plaintiff concedes, that, in analogy to the statute limiting the time within which a writ of error may be sued out, the court would probably not award the writ after two years except upon very special grounds. But the writ was issued in this case within two years after the action of the board of review, and the reasons why the application was not earlier made are fully stated in the affidavits of Messrs. Wilson & Hunt, the plaintiff's attorneys in the cause. The delay in applying for the writ is satisfactorily explained by them; and therefore, without laying down any general rule on the subject, we content ourselves with saying, that under the circumstances the plaintiff was not guilty of *laches* in applying for the writ. He very naturally assumed that his counsel understood much better than he did, what legal proceedings should be instituted to protect his rights. It appears that two suits were commenced in equity (before the writ of *certiorari* was applied for), to restrain the collection of the taxes assessed against the plaintiff's real estate; one against the town treasurer, and the other against the county treasurer; both of which actions were dismissed by the plaintiff before a hearing upon the merits. And it is insisted that the voluntary dismissal of these actions ought to bar and conclude the plaintiff from resorting to this remedy. It is not, however, contended that the prosecution and discontinuance of those actions can operate as a technical bar to this proceeding, and we do not see that such litigation ought, under the circumstances, to have any influence upon the disposition of the cause. It is very doubtful whether the plaintiff could have obtained any relief in those actions, or had

the action of the board of review set aside.  And this is all we deem it necessary to say upon the preliminary questions discussed in the case.

Considering the case upon the merits, the inquiry arises, whether any sufficient ground is presented for setting aside the action of the board of review.  It appears to us that there is. The valuation of the board manifestly proceeds upon an erroneous rule, and an incorrect interpretation of the statute in force in 1870.  It was really contrary to all the evidence adduced before the board in regard to the valuation of the real estate.  In the cases of *Phillips v. The City of Stevens Point*, 25 Wis., 594, and *The Milwaukee Iron Co. v. Schubel, Town Clerk, etc.*, 29 Wis., 444, this court held that the board could not arbitrarily affix values to property in disregard of the sworn statements of witnesses.  The board was bound by the undisputed evidence in regard to the valuation.  It is possible that ch. 166, Laws of 1871, has changed this rule, and authorizes the board, when they deem the valuation too low, to raise the same, even against the evidence given before them in respect to the valuation.  But in 1870 the board had no such discretion.  They were bound to take the valuation as fixed by persons examined before them upon oath.  Now, in this case, the plaintiff appeared before the board and was examined in regard to the value of the real estate in question.  And this was really all the testimony there was before the board on the subject.  Still the board refused to reduce the valuation as they were required by law to do.  This action of the board was manifestly erroneous and illegal.

In support of the motion to quash, certain affidavits were read for the purpose of showing that the lands were really worth as much or more than the valuation placed upon them by the assessor and fixed by the board of review.  These affidavits were met by counter affidavits, which tended to show that the lands were assessed above their cash value, and much more in proportion to their true value than other real estate in

the town of the same value. It is now claimed that the great preponderance of testimony shows that no injustice was done the plaintiff, even if he pays according to the valuation fixed upon his property by the board of review, and therefore he ought not to be permitted on this writ to take advantage of any formal and technical errors. If we were satisfied that substantial justice had been done, and that the plaintiff would pay no more than his proportion of taxes if the valuation fixed by the board were adhered to, we should be strongly inclined to dismiss the writ. But we do not think such an inference can be drawn from all the matters disclosed in the record.

The order of the circuit court, reversing and setting aside the valuation of the real estate in question fixed by the board of review, must therefore be affirmed.

*By the Court.*— Order affirmed.