THE STATE EX REL. HELLER, Respondent, vs. LAWLER, Clerk, etc., Appellant.

*June 2 — June 22, 1899.*

Certiorari: *Return: Practice: Findings: Taxation: Assessment: Board of review: Evidence: Jurisdiction: Reassessment: Immaterial error.*

1. The return to a writ of *certiorari* is a response to the commands of the writ, and not an answer to the allegations of the petition.
2. A cause having been submitted for decision, on the merits, on the petition and return to a writ of *certiorari,* findings of fact are not required, the sole question being whether the facts set forth in the return, excluding therefrom all matters introduced into it not properly matters of record, justified the decision complained of.
3. Where the return of a board of review to a writ of *certiorari* showed that the uncontroverted evidence of the relator, which was the only evidence produced before the board, established that the assessed valuation of his lands was too high, and also the basis on which his lands should be assessed in order to equalize the assessments, and nothing appeared in the record to impair its credibility, it was the plain duty of the board to correct the assessed valuation of his property accordingly, and their failure to do so constituted a clear violation of law which is subject to be corrected by *certiorari.*
4. The clear intent and meaning of sec. 1061, Stats. 1898, is to place it beyond the power of the board of review to change the valuation of real estate without evidence, and to make it the duty of such board to change such valuation in accordance with the evidence.
5. It is well settled that in proceedings of a summary character like that of boards of review under the statutes of Wisconsin,— bodies exercising *quasi*-judicial powers, not admitting of any other remedy for a direct review,— clear violations of law in doing those things which are within the jurisdiction of the body to do in a legal manner may be corrected upon the common-law writ of *certiorari.*

The State ex rel. Heller vs. Lawler.

6. In an action to test by *certiorari* the proceedings of a board of re-
view in respect to its decision on the relator's application to have
the assessed valuation of his property materially changed, so as to
be on a basis of equality with the assessment of property generally
in the assessment district, it is error in granting the relief sought
to require the board to reassess the relator's property, but on ap-
peal such error is not prejudicial where the assessment roll has
passed beyond the control of the officers having power to change it.

7. While equitable considerations may require the quashing of a writ
of *certiorari,* even after a hearing on the merits and appeal to the
supreme court, yet where such discretionary power of the court is
not invoked, and the writ was sued out, hearing had, and judgment
rendered while the assessment roll was still in the hands of the
proper clerk, and the circumstances are such that the relator is en-
titled to the remedy by *certiorari,* the writ should be retained and
the matter presented by the return decided upon the merits.

APPEAL from a judgment of the superior court of Milwau-
kee county: GEO. E. SUTHERLAND, Judge.   *Modified and af-
firmed.*

*Simon Heller* sued out a writ of *certiorari* to test the va-
lidity of the proceedings of the board of review of the town
of Lake in respect to its decision on his application to have
the valuation of his property, as made by the assessor of
such town, materially changed so as to be on a basis of
equality with the assessment of property generally in said
town.   The petition for the writ stated, in substance, that
the petitioner appeared before the equalizing board when it
was in regular session for the performance of its duties, and
on oath testified that his property, consisting of unimproved
lots and blocks, was not more valuable than unplatted land
in the same section; nevertheless, that it had been raised
from the assessed valuation previous to the platting to the
extent of about seventy-five per cent., and that the assess-
ment in question was about three times as much as that of
improved, unplatted, and more valuable lands in the same
government section; that he pointed out on the assessment
roll numerous instances of such inequalities, demonstrating

the truth of his statements; that no evidence was given before the board on the subject but that of the petitioner; that the members of the board, individually, were owners of land in the same section with that of the petitioner's property, which lands were assessed about one third as high as his property, though such lands were in fact more valuable; that the board made a horizontal reduction of the valuation of petitioner's land, of twenty per cent., and raised the valuation of some of the unplatted lands, not including, however, those owned by members of the board, such increase being of a trifling character, leaving the inequality between the valuation of petitioner's property and the assessment of other lands in the same section substantially the same as before; that the board disregarded the evidence produced before them and their duty in the premises and made an arbitrary decision as to the petitioner's application for an assessment of his property on a basis of equality with the valuation of property generally in the town; and that they did not cause all of petitioner's evidence to be reduced to writing.

Due return to the writ was made, stating that the petitioner's evidence was heard and the substance of it taken down in writing; that the board viewed the premises in question, examined the assessment roll as to all property platted and unplatted in the vicinity of petitioner's land, and then determined from all the evidence and facts before them that the assessment of petitioner's property should be reduced and the assessment of certain other property in the vicinity should be increased; and that they made the necessary changes to accord with such determination, as indicated by an exhibit attached to the return. The exhibit showed increase of assessment in some instances, and a uniform reduction of twenty per cent. in the park lands, as stated in the petition. The return further showed in detail the proceedings taken by the board and that minutes were kept of all the proceedings, a copy of which minutes was attached to

and made a part of the return, including a copy of the evidence given by the petitioner as taken down by the town clerk. Such copy was as follows: " *Simon Heller*, being first duly sworn on oath, says: I call your attention to the valuation of the assessment of Howell Avenue Park, which is assessed $19,545; after the road and highways are taken out it would be $329.25 per acre, or in other words the Howell avenue owners pay taxes on land not owned by them. The assessment is equal to about $217.50 per acre for ninety acres. This land is almost entirely wild stumpage land, less than one tenth is cultivated, no buildings or improvements are on it, and in other respects it is the same as when platted. All other lands in the same section are more or less in a high state of cultivation, with buildings, most of which are valuable, and are assessed from $87.50 to $118 per acre, including buildings, except John Howard's seventy acres, a valuable tract adjoining the Howell avenue electric car line for about half a mile, which is assessed at $150 per acre, the value of the buildings included, and is worth far more than twice the value of Howell Avenue Park Land Company. I call attention to the land in section 21, east of Howell Avenue Park Company, which is assessed at the same valuation as land in section 20. An assessment of $75 per acre on Howell Avenue Park would be on the same basis as other land assessed by your assessor, except the northeast ten acres of said tract, the proportional assessment of that would be about $125 per acre. I hereby submit to you a list of the property so assessed by your assessor, marked 'Exhibit A,' and which I expressly refer to in my statement, and I demand that this board correct the assessment accordingly." The statement attached contained a list of sixteen descriptions of unplatted lands assessed at from $87.50 to $125 per acre, and the Howell Avenue Park lands assessed in the aggregate at a sum equal to $217⅙ per acre, including streets, and $325¼ per acre excluding streets. The petitioner's lands were a part of the so-called park lands.

On the petition for the writ, the writ, and the return, the trial court made findings of fact and conclusions of law to the effect that all the allegations of the petition were true; that the board of review disregarded the evidence produced before them relative to the wrong complained of by the petitioner, and made an arbitrary decision resulting in placing an inequitable valuation upon his lands, and that their proceedings in the matter were void, and that the petitioner was entitled to judgment accordingly, and requiring such board to reassess his property according to law, and for a further judgment for costs. Judgment was entered accordingly and this appeal was taken therefrom.

For the appellant there was a brief by *Toohey & Gilmore,* and oral argument by *J. L. Gilmore.*

*V. W. Seely,* for the respondent.

MARSHALL, J. The practice adopted in this case cannot be approved. The return seems to have been regarded as an answer to the petition instead of a response to the commands of the writ. Findings of fact were filed, following substantially the allegations of the petition, upon the theory that, not being denied by the return, they were admitted and to be considered as true in deciding the matter presented upon the merits. Findings of facts were not required. The cause having been submitted for decision on the merits, the sole question was whether the facts set forth in the return, excluding therefrom all matters introduced into it not properly matters of record, justified the decision of the board which was complained of. The return showed that by the uncontroverted evidence of the relator it was established before the board that the assessed value of his land which was platted was $217.50 per acre, while that of the unplatted lands generally, belonging to other persons in the same section and vicinity, was fixed at from $87.50 to $118 per acre; that the latter were the most valuable; that in order to equalize the assessments it was necessary to reduce the as-

The State ex rel. Heller vs. Lawler.

sessment of relator's land to a basis of $75 per acre; and that the board on such evidence reduced the assessment of the relator's land twenty per cent:, and raised that of the unplatted land referred to about five per cent.

The evidence of the relator being the only evidence produced, and there being nothing, as appears by the record, impairing its credibility, it was the plain duty of the board to correct the assessed valuation of his property accordingly, and their failure so to do constituted a clear violation of law subject to be corrected by *certiorari*, according to the repeated decisions of this court. In *Milwaukee I. Co. v. Schubel*, 29 Wis. 444, it was said in relation to a like situation: "The board was bound to take these uncontradicted statements of the witnesses under oath as to the value of the property, and should have corrected the assessment roll according to them. For, where the evidence is undisputed, and there is no proof whatever to sustain the decision of the board, they cannot arbitrarily and capriciously place a value upon the real estate different from that placed upon it by the witnesses. . . . They have no more legal power to decide against all the testimony in respect to the value of property, than a court has to decide against all the evidence produced before it." And further, in effect, where the board decides upon conflicting evidence admitting of a conclusion either way on a mooted question, such a decision is final; but a decision contrary to credible evidence indisputably establishing a fact, is an excess of jurisdiction, a violation of law, and may be reached by *certiorari*. The statute is very plain regarding the duty of the board in deciding upon an application to correct an assessment of property. Sec. 1061, Stats. 1898, provides as follows: "Any person claiming any correction of the assessment may call witnesses to support the same; or to show that any property on the roll is assessed too high or too low." "The board of review shall, when satisfied from the evidence taken that the assess-

or's valuation is too high or too low, lower or raise the same accordingly." The clear intent of that language is to place it beyond the power of the board of review to change the valuation of real estate without evidence, and to require them to change such valuation in accordance with evidence. This subject was so recently discussed in *Brown v. Oneida Co., ante,* p. 149, that it seems useless to pursue it further.

Some question is raised as to the function of the writ of *certiorari* regarding a mere excess of jurisdiction or decision in violation of law, where the subject matter and parties are within the jurisdiction of the body whose decision is challenged. It has been long and well settled, as indicated in the *Milwaukee Iron Co. Case,* that in proceedings of a summary character, like that of boards of review under our statutes, bodies exercising *quasi*-judicial powers, not admitting of any other remedy for a direct review, clear violations of law in doing those things which are within the jurisdiction of the body to do in a legal manner may be corrected upon common-law writ of *certiorari.* To the same effect, *State ex rel. Moreland v. Whitford,* 54 Wis. 150; *State ex rel. Wood Co. v. Dodge Co.* 56 Wis. 79. That covers this case. The board of review had jurisdiction to change the assessed valuation of the relator's property; but in making the change in violation of the statute, which required them to decide upon the relator's application according to the evidence produced before them, they violated the law. Their decision was illegal and void and the court had jurisdiction to so adjudicate upon the return to the writ of *certiorari* showing the facts.

That part of the judgment requiring the board to reassess the relator's property is erroneous, but not prejudicial. The roll having passed beyond the control of the officers having power to change it, the requirement for reassessment was nugatory. It is the practice in many jurisdictions, in that situation, to decline to pass upon the merits, and, exercising

the discretionary power of the court over the remedy, to quash the writ even after return and hearing. *People ex rel. L. S. & M. S. R. Co. v. Dunkirk*, 38 Hun, 7; *People ex rel. Weekes v. Queens Co.* 82 N. Y. 275. This court has likewise held that equitable considerations may require the quashing of a writ of *certiorari* even after a hearing on the merits and appeal to this court from a judgment of affirmance. *State ex rel. Schintgen v. Mayor of La Crosse*, 101 Wis. 208. That does not militate against the rule that unless the circumstances be such that the relator is not entitled to the remedy by *certiorari*, the only proper disposition to make after a return to the writ is a judgment on the merits. *State ex rel. Dalrymple v. Milwaukee Co.* 58 Wis. 4; *State ex rel. Cameron v. Roberts*, 87 Wis. 292; *State ex rel. Barteau v. Circuit Court*, 101 Wis. 422. The discretionary power of the court to deny the remedy by *certiorari* has not been invoked in this case, and in view of the fact that the writ was sued out, the hearing upon it had, and judgment rendered while the assessment roll was still in the hands of the town clerk, it would have been contrary to the precedents in this state to have done otherwise than retain the writ and decide the matter presented by the return upon the merits, as the trial court did.

*By the Court.*— The judgment of the superior court is modified so far as it requires a reassessment or equalization of the assessment of relator's property, and as so modified is affirmed with costs in favor of the respondent.