STATE EX REL. INTERNATIONAL BUSINESS MACHINES CORPORATION, Appellant, vs. BOARD OF REVIEW OF THE CITY OF FOND DU LAC and others, Respondents.

*April 11—May 9, 1939.*

304

*Fred W. Genrich* of Wausau and *George R. Currie* of Sheboygan, attorneys, and *A. L. Hougen* of Manitowoc of counsel, for the appellant.

*Allan L. Edgarton* of Fond du Lac, for the respondents.

NELSON, J.   This controversy concerns the corrrectness of an assessment of certain personal property belonging to the plaintiff which was located in the city of Fond du Lac on May 1, 1938.   The property consisted of electrical tabulating machines which had theretofore been leased to Fred Rueping Leather Company and to the First Fond du Lac National Bank.   It was assessed by the assessor at $42,000.   The plaintiff thought the valuation of its property too high and therefore challenged the assessment before the Board of Review.   Sec. 70.47 (2), Stats.   At the hearings before the board, the plaintiff adduced testimony in support of its contention that the assessment was too high.   Nicholas Entringer, the assessor, and Aldro Jenks, district supervisor of assessments under the tax commission, testified in support

of the assessment. The board decided that the challenged assessment was fair, reasonable, and correct. The plaintiff thereafter petitioned the court for a writ of certiorari, which issued. Upon hearing duly had the trial court affirmed the decision of the board.

Before detailing the evidence adduced before the board, and expressing our opinion, we deem it desirable briefly to restate the well-established law of this state applicable to controversies of this kind. An assessment made by an assessor is presumed to be correct and is binding upon the board of review in the absence of evidence showing that it is incorrect. *State ex rel. Miller v. Thompson*, 151 Wis. 184, 138 N. W. 628; *State ex rel. Althen v. Klein*, 157 Wis. 308, 147 N. W. 373; *State ex rel. Kimberly-Clark Co. v. Williams*, 160 Wis. 648, 152 N. W. 450; *State ex rel. Pierce v. Jodon*, 182 Wis. 645, 197 N. W. 189; *Worthington Pump & M. Corp. v. Cudahy*, 205 Wis. 227, 237 N. W. 140.

A board of review is not an assessing body but rather a *quasi*-judicial body whose duty it is to hear evidence tending to show errors in the assessment roll and to decide upon the evidence adduced whether the assessor's valuation is correct. *Fond du Lac Water Co. v. Fond du Lac*, 82 Wis. 322, 52 N. W. 439; *State ex rel. Augusta v. Losby*, 115 Wis. 57, 63, 90 N. W. 188; *Brown v. Oneida County*, 103 Wis. 149, 79 N. W. 216; *State ex rel. Heller v. Lawler*, 103 Wis. 460, 79 N. W. 777; *State ex rel. Kimberly-Clark Co. v. Williams*, *supra*.

If there be adduced before the board competent evidence which is unimpeached and which shows that the assessor's valuation is incorrect, such evidence cannot be disregarded by the board. Disregard of such evidence is considered jurisdictional error. *Milwaukee Iron Co. v. Schubel*, 29 Wis. 444, 453; *Tainter v. Lucas*, 29 Wis. 375; *Wilson v. Heller*, 32 Wis. 457; *State ex rel. Heller v. Lawler*, *supra*; *Brown v.*

*Oneida County, supra; State ex rel. Kimberly-Clark Co. v. Williams, supra.*

In assessing personal property for taxation purposes, it is of course the duty of the assessor to observe the requirements of sec. 70.34, Stats., which in part provides:

"All articles of personal property shall, as far as practicable, be valued by the assessor upon actual view at their true cash value."

Ordinarily the assessment of personal property gives rise to little or no difficulty. Controversies involving such assessments have not been numerous. Most personal property with which assessors are required to deal is bought and sold, and its true cash value may therefore be fairly determined. However, the property involved in this controversy, and similar property manufactured by the plaintiff, is never sold (at least in this country) but always leased under contracts which require the plaintiff, without further charge, to render valuable and expert services to the lessees and users of the machines by highly trained employees, during the lives of the contracts. Those services will hereinafter be specifically enumerated. The machines are concededly tangible personal property and are unquestionably subject to taxation. As to this there is no controversy. Similar machines are leased by the plaintiff to banks, manufacturers, insurance companies, and others throughout the United States, who have need for highly efficient accounting and statistical tabulations. The property consists of electrical duplicating key punches, a multiplying punch, sorting machines, tabulating machines, and summary punch and reproducer machines. They are highly complicated and may be set up only by experts particularly trained for that purpose. The machines, according to the testimony, would be of little practical value without the service. The amount annually paid by the Rueping Company and the bank for the services which the plaintiff renders and for the use

of the machines is $10,327.75. Since the machines are never sold and since the amounts paid by the lessees or users thereof covers the services rendered by the plaintiff as well as the use of the machines, the assessor was confronted with a concededly new and perplexing problem. The precise question presented to us is one of first impression, and, so far as we can discover, has not been considered by any court of last resort in this country. A somewhat similar case involving the assessment of certain leased telephone equipment was decided by the supreme court of Ohio in 1899. That case will later be referred to and the holding therein stated.

At the hearing before the Board of Review, the deposition of W. P. Westphal, the manager of the plaintiff's branch office for Wisconsin and upper Michigan, was offered and received in evidence. That deposition was taken pursuant to stipulation, in the presence of the attorneys for the respective parties, Mr. Entringer, the assessor, and Mr. Jenks, the supervisor of assessments. Mr. Westphal testified as to the contracts, pursuant to which the machines were placed, serviced, and used, the nature of the machines, the uses to which they are put, and the nature of the services which the plaintiff performs without additional charge under the contracts. Such services, he testified, include: Setting up the machines so that the accounting and tabulating results desired by the lessee or user thereof will be accomplished to his satisfaction; fully instructing the employee or employees of the lessee or user as to the use and operation of such machines; fully maintaining and repairing such machines; rendering immediate service in case of a breakdown; inspecting the machines weekly for the purpose of assuring efficient and continuous operation; immediately furnishing a substitute operator in case an operator-employee of the lessee or user becomes ill; rendering advice from time to time in case the lessee's needs change, necessitating other or additional equipment; substituting improved machines in case the machines in use become

obsolete or are not adapted to the user's business, or become inefficient as a result of use and wear and tear.

The deposition of M. G. Connally was likewise taken and offered and received in evidence by the board. Mr. Connally is associated with the plaintiff, and has charge of all tax matters in all countries in which the plaintiff is engaged in business, and is responsible for all of the plaintiff's tax accounting figures. He testified that machines of the same types as those involved in this controversy have been sold by the plaintiff to subsidiary companies in foreign countries and to one company engaged in business in England, Ireland, Australia, and India, in which the plaintiff had no interest; that applying the prices which were received by the company on sales abroad to the Fond du Lac machines, the prices of the Fond du Lac machines new would be $9,210.82; that the machines manufactured by the plaintiff and leased under contracts depreciate at the rate of fifteen per cent per annum; that such rate of depreciation is approved by the government of the United States and by the several states in determining plaintiff's income taxes; that as a result of the experience of the company during many years, five per cent of all of its machines annually become obsolete and of no value; that the value of the Fond du Lac machines, less actual depreciation and obsolescence, was $3,213.92; that the fire insurance value of the machines at the Rueping Company, as of May 1, 1938, was $4,619.73, and that of the machines at the bank was $1,277.15; that the book value of the Fond du Lac machines as of May 1, 1938, was $3,608.04, after first deducting depreciation at the rate of fifteen per cent per annum and five per cent for obsolescence; that the fair market value of all of the Fond du Lac machines as of May 1, 1938, was $7,517.75, if their value be determined according to the comparative-value or cost-plus formula, based upon the actual cost and sale price of an electric writing machine, which is manufactured by the plaintiff and sometimes leased but generally sold

to customers. The electric writing machine permits an operator to make an original and twenty carbon copies. Other writing machines may be hooked up in a battery of as many as twenty machines and all operated by one person. The selling price of the electric writing machine is $225. Its actual cost to the plaintiff is $108. It rents for $8 per month or $96 per year. The ratio of rental income to actual cost is $88.88. The ratio of selling price to actual cost is 2.0833. Mr. Connally testified, that after a study conducted by the Kansas tax commission, it adopted the comparative-value formula just mentioned and declared the fair market value of the tabulating machines to be 2.0833 times their actual cost; that applying that formula to the Fond du Lac machines the fair selling price of the Fond du Lac machines would be $6,086.96; that at first he had considered that the actual cost to the plaintiff, less depreciation, was the true cash value of such machines, but now thought that the fair cash value of the machines should be arrived at by applying the comparative-value formula, which involves a comparison of the machines with other patented machines manufactured by the plaintiff and which sell for 2.0833 times their actual cost. Mr. Connally further testified that thirty-five per cent of the income received was allocable to the services rendered under the contracts.

Mr. Entringer, the assessor, testified in support of the assessment that he had assessed the property from the best information obtainable as of May 1, 1938, for its full market and cash value; that it was a known fact that equipment which is protected by patents can be sold for from three to five times its actual cost and in some cases for more. He did not state the source of or the basis of such "known fact." He further testified that he had been told by a representative of Remington-Rand Company, a subsidiary of which manufactures similar equipment which is capable of performing similar accounting work, that its machines could be bought for fifty-one times the gross monthly rental charged by it

therefor. But there was no evidence of any sale ever having been made by that company. No testimony was given as to the monthly rentals charged by Remington-Rand Company for its machines. He further testified that in arriving at the $42,000 assessment he had taken the gross monthly rental, deducted reasonable service expenses and got as a result, $700 rental per month or $8,400 per year, which he capitalized at twenty per cent and thereby obtained the cash value of said machines.

Mr. Jenks, the supervisor of assessments, testified that a representative of Remington-Rand Company had told him that its equipment could be purchased for fifty to fifty-one times its "monthly cost." That statement was objected to as hearsay but was received in evidence. Mr. Jenks briefly discussed the application of the capitalizing-income formula as a method of determining cash value, and stated in respect thereto that the only dispute is as to the rate to be applied. Mr. Entringer was recalled and testified that the amount allocated to the service charge which he had deducted from the gross income was well over $150 monthly.

It is clear that the assessor based his assessment almost wholly upon the gross annual income from which he subtracted an amount which he deemed reasonably sufficient to cover the cost of the services rendered by the plaintiff and then capitalized the remainder at twenty per cent. The supervisor of assessments, in attempting to uphold the assessment, did the same thing. Neither gave any consideration to such elements as cost, depreciation, replacement value, obsolescence, amount of insurance carried, actual cost of the service rendered by the plaintiff under the contract, nor did they in any manner controvert or dispute the testimony given by the plaintiff's witnesses as to such elements.

This court has several times held that in determining market value of real estate for taxation purposes it is proper to consider such elements as cost, depreciation, replacement value, income, industrial conditions, location and occupancy,

sales of like property, book value, amount of insurance carried, value asserted in a prospectus, and appraisals procured by owner. *State ex rel. Flambeau Paper Co. v. Windus,* 208 Wis. 583, 243 N. W. 216; *State ex rel. North Shore Development Co. v. Axtell,* 216 Wis. 153, 256 N. W. 622.

We have also held with respect to real-estate assessments that an assessment should not be based on income alone. *State ex rel. North Shore Development Co. v. Axtell, supra; Wahl v. H. W. & S. M. Tullgren, Inc.,* 222 Wis. 306, 267 N. W. 278; *Buildings Development Co. v. Milwaukee,* 225 Wis. 357, 274 N. W. 298.

If income be considered and the capitalization-of-income formula be applied, net income, not gross income, should be considered. *Wisconsin Gas & Electric Co. v. Tax Comm.* 221 Wis. 487, 266 N. W. 186, 268 N. W. 121. Though net income from the rental of either real or personal property is always a proper element to consider, it cannot be considered as the sole controlling factor in determining value of either real or personal property. Such a rule, if given approval, would require a holding that nonincome-producing property is practically valueless for taxation purposes.

In *State ex rel. Attorney General v. Halliday,* 61 Ohio St. 352, 56 N. E. 118, the court dealt with the assessed value of telephone transmitters and receivers leased to a local company under a contract which gave to the lessee the benefit of services which were to be performed by the lessor. That case involved a controversy between the auditor of state and a county auditor regarding the assessment of the leased telephone equipment mentioned. The auditor of state contended that each set of instruments earned $14 per year, and that the earning capacity of such instruments should be considered by the county auditor. The county auditor contended the instruments in question should be assessed on the basis of cost of manufacture. The court said (p. 379) :

"That the income-producing capacity of an article is an important factor in determining its value is so obvious as to

seem beyond the bounds of controversy. This doctrine was sanctioned in its application to real estate in *State v. Jones, Auditor,* 51 Ohio St. 513, and in *Express Co. v. Ohio,* 166 U. S. 220, and no reason is perceived nor has any been assigned why a principle so plain and just should not be applied universally to all species of property. This is the first inquiry that a prudent prospective purchaser would make. Other considerations would doubtless receive his attention, as the original cost, the length of time it would last, the expense of repairs and the cost of reproduction and the like; none of them would be passed by. Other considerations no doubt would occur to a sagacious, thoughtful man. But without pursuing the question further, we hold that the command of the auditor of state requiring that the auditor of Franklin county, the respondent, to consider the earnings or rental of the instrument in question, was lawful and should have been obeyed by the latter in respect to those that have no 'usual selling price.' "

The court, however, held that the county auditor was not bound to follow the instructions of the auditor of state to determine the value of the instruments upon the basis of earning capacity alone. The court pointed out that the instruments there dealt with did not bear a long life and that the rentals paid therefor included other services which were agreed to be performed by the lessor company. The court made no suggestion as to any method to be pursued in determining the reasonable market value of such equipment.

The Board of Review of Fond du Lac, in deciding the assessment was just, fair, and reasonable, practically ignored all of the testimony adduced by the plaintiff relating to the actual cost of the machines, the rate of depreciation and obsolescence, their insurable value, their replacement value, and particularly the evidence relating to the probable sale price of such machines had the plaintiff sold them rather than leased them under contracts which covered the services hereinbefore enumerated; it gave only scant consideration to the evidence relating to the amount of the gross income from the machines which properly should be allocated to the services rendered by

the plaintiff under its contracts, including a profit on its service, gave no consideration to the evidence bearing upon the probable cash value or selling price of the machines as determined by the comparative-value formula hereinbefore referred to, and expressly based its decision on the hearsay testimony that the Remington-Rand Company machines could be bought for fifty to fifty-one times the monthly rental. In short, the board practically gave no consideration to anything except that of capitalizing the income. This, in our view, was erroneous and resulted in a grossly excessive assessment which cannot be sustained.

To stop here and simply reverse the circuit court would leave the solution of the problem of ascertaining the correct cash value of these machines for taxation purposes so indefinite and uncertain as probably to lead to another incorrect assessment and further litigation.

The legislature has decreed that all personal property shall, as far as practicable, be valued by the assessor upon actual view at their true cash value. Ordinarily, as before stated, the problem of determining true cash value of articles of personal property for taxation purposes is not difficult. Ordinarily personal property is bought and sold on the market, and if an article of personal property has not been bought on the market it may be compared with similar property which is bought and sold on the market. But here neither the property in question nor like property manufactured by the plaintiff, is ever sold in this country. Similar machines, though not electrically operated, which enter into competition with the plaintiff's machines have never been sold in this country. Nevertheless, the property is tangible personal property and is subject to taxation at its true cash value. Is there some formula or method which may be employed to ascertain with reasonable certainty the cash value of the plaintiff's machines? In our opinion, there is such a method. In assessments involving property of this kind the inquiry should relate to the

price that such property would probably bring if offered for sale.

· "The value of personal property for purposes of taxation is to be estimated according to its fair and actual cash market value *or the price it would sell for in cash* in the usual course of business. . . ." (Italics ours.) 61 C. J. p. 649, § 803.

In *Allen v. Bonded Municipal Corp.* (R. I.) 4 Atl. (2d) 249, 251, it was said:

"The term 'full and fair cash value' has been construed by this court to mean the price that the property *would probably bring* in a transaction in a fair market between a willing seller and a willing buyer."

That was said in respect to real estate but it is equally applicable to personal property. Such a price ought, with reasonable certainty, to be ascertainable. Clearly, in our opinion, the cash value of the machines at Fond du Lac is not their actual manufacturing cost to the plaintiff nor their replacement value new, which is the same as actual cost, plus the cost of transportation and installation. The selling price of personal property manufactured and sold on the market obviously includes, in addition to actual manufacturing cost, sales expense, transportation, installation expenses,—in some cases cost of operation instruction,—and over and above all of these things, a substantial profit. Since the property in question is never sold, and since no competent evidence was adduced tending to show that the mechanically driven machines manufactured by a subsidiary of Remington-Rand Company, which performed the same accounting work and which competed with the plaintiff's machines, have ever been sold in this country, what better method can be employed than that of comparing the price obtained for other patented electrical machines manufactured and sold by the plaintiff, the actual cost of which is known or can be ascertained with reasonable certainty. It is not illogical to say that if the machines here in question were sold they would probably be sold at a price over cost substantially comparable to that of the

electrical writing machines which are also manufactured and sold by the plaintiff. The value thus obtained must be reasonably depreciated in accordance with the credible evidence relating to depreciation. Under the statute as it now exists, we conclude that the method suggested would result in a fair and just assessment and one which could not be successfully challenged in this state.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings.