State ex rel. National Dairy Products Corporation—Sealtest Central Division, Appellant, vs. Piasecki and others, Respondents.

*November 7—December 3, 1957.*

For the appellant there was a brief by *Zimmers, Randall & Zimmers,* and oral argument by *Bruce B. F. Randolph,* all of Milwaukee.

For the respondents there was a brief by *Walter J. Mattison,* city attorney of Milwaukee, and *George A. Bowman, Jr.,* assistant city attorney, and oral argument by *Mr. Bowman.*

FAIRCHILD, J. The assessors were called upon to determine the true cash value of patented machines which are not for sale.

Is a comparable, similar machine bought and sold? *State ex rel. I. B. M. Corp. v. Board of Review* (1939), 231 Wis. 303, 314, 285 N. W. 784. The record discloses that American Can Company also produces machines which fill cartons of milk and operate at comparable rates. They can be bought or rented. They do not, however, form a flat piece of paper (called a "blank") into a carton, but must be fed cartons which are produced by American Can Company. There is no evidence as to the comparative cost of the blanks and preformed cartons except testimony of one of relator's witnesses that various losses inherent in the operation of the Pure-Pak machines result in the ultimate cost of blanks being approximately the same as of cartons. The cartons,

however, require much greater storage space than the blanks. Relator considers the shape of the Pure-Pak cartons an advantage because they have a "gable" top on which material can be printed for the enlightenment of the customer. The blanks are available from several sources, but the cartons from only one. This is an advantage if there is an interruption in production of the cartons. On these facts the value of the Pure-Pak machines is somewhat larger than that of American Can Company's, and there is no evidence from which one could determine the size of the difference nor that the assessors were duty bound to do so.

It is clear that the determination of true cash value in these circumstances must be reached by a theoretical approach.

Relator suggested that Ex-Cell-O's book value should be adopted as the assessment. Cost of the "C" machine is shown as $34,000 and net book value as of May 1, 1955, $19,266.78. Cost of each "F" machine is $18,800 and net book value, $10,653.22. Ex-Cell-O charges depreciation on the basis of a five-year life and this is apparently permitted for income-tax purposes. It does appear, however, that one machine in Milwaukee has been in use for nearly eight years. In a similar situation this court held that the cash value clearly does not equal manufacturing cost for a number of reasons. *State ex rel. I. B. M. Corp. v. Board of Review, supra,* page 315.

The chief assessor's method of valuation amounts to a capitalization of net rent received for the machines. It does not appear that there is anything inherently wrong with the theory he followed. In applying his theory, he made a number of assumptions. He assumed that 6 per cent was a proper allowance for interest and risk; that the life of each machine is ten years; that 2 per cent of the value was a fair allowance for the burdens carried by the manufacturer under its lease

which it would not have assumed in the event of a sale, in other words, for that part of the gross rent which ought not to be included in determining market value; and that the average production rent paid on machines in Milwaukee was to be used in computing the average annual rent rather than the minimum rent specified in the leases.

Relator produced no evidence to prove that any of these assumptions were wrong, nor are they patently so. Relator argued that it was unreasonable to include more than the minimum rent in the computation because an average of payments is large because it includes relator's payments. These are large because of several high-volume institutional contracts which relator enjoys. Thus the assessment of machines which are used less than relator's will be increased by the use of the average. To the contrary, we think that part of the value of the machine is its capacity to produce, and the value of a little-used machine includes its potential even though not fully used. Unless the average is warped because there were so few machines included in the computation, we see nothing objectionable in considering average production rent rather than minimum production rent. Relator offered no evidence to show that the average for Milwaukee was higher than the average derived from a more-adequate sampling.

Thus we reach the conclusion that the assessor's method and application of it have not been successfully challenged unless he or the board have failed to consider other information which tends to produce a different result.

The chief assessor testified to having considered four other figures, two of which were lower and two higher than the market values determined by his method. He made no adjustment in his own figures as a result of the others. Bearing in mind that the market value determined by him was $205,600, the other figures were as follows:

$250,169.48. In 1953 a dairy in Milwaukee bought two American Can machines which it had used for two years. The purchase price equaled 6.41 times the annual rent. He multiplied relator's total annual rent by 6.41.

$188,600. He accepted Ex-Cell-O's book cost, depreciated it on the basis of 10 per cent per year and multiplied by 3.5. 3.5 is a factor which has been worked out for the assessment of I. B. M. leased machines. Cost is multiplied by it to obtain cash value. He pointed out that elements of I. B. M.'s costs are known because an audit has been made and that he does not have similar knowledge of Ex-Cell-O's costs.

$221,300. He heard from an assessor elsewhere in Wisconsin of one actual sale of a Pure-Pak machine. He had not verified the circumstances, but testified that he computed a ratio of rent to price and applied it to relator's rent. The record does not disclose the computation.

$181,900. He testified that in determining market value of leased light machinery, the annual rent is commonly multiplied by 4.5. He discarded this approach because of the special patent value inherent in Pure-Pak.

Relator introduced evidence that an American Can Company milk-filler machine sells for $30,250 and can be rented at rates which average, over ten years, $6,501 per year. Thus the selling price equals 4.65 times the average rent. If the average rent paid by relator is multiplied by 4.65 and then depreciated, the resulting market value would be $137,080. Another American Can machine sells for $16,525 and rental averages $3,805 per year. The selling price is 4.34 times the average rent.

The city introduced evidence of another American Can Company milk filler which sells for $23,245 and rental averages $3,112 per year. The selling price is 7.47 times the annual rent. Applying this factor to the Pure-Pak machines, the resulting depreciated market value would be $220,213.

Neither party introduced evidence as to insurance carried on the Pure-Pak machines. In making an assessment such as is involved here, that information should be considered if it can be obtained. See *State ex rel. I. B. M. Corp. v. Board of Review, supra,* page 313.

It is not the function of the court to weigh the evidence before the board. If on any reasonable view of the evidence, it will support the conclusion arrived at, the board had jurisdiction to decide as it did. *State ex rel. Dane County Title Co. v. Board of Review,* ante, p. 51, 85 N. W. (2d) 864.

We would have no great difficulty in sustaining the board of review were it not for the evidence as to the ratio between rent and selling price of the $30,000 and $16,000 American Can Company machines. The record shows that those ratios were not considered by the assessors or by the board of review, but contains no evidence explaining why they are irrelevant.

The chief assessor gave explanations why he considered that the $188,600 and $181,900 comparison figures did not require a reduction in the valuation he had derived by capitalization. The fact that other data produced figures larger than the chief assessor's ($250,169.48 and $221,300) might sufficiently support disregard of the lower figures in favor of the chief assessor's figure which lies between.

But it appears to be the business judgment of the managers of American Can Company that the rental they charge for their milk fillers is the equivalent of the price at which they are willing to sell. True, the ratio between rent and selling price of their $23,000 machine tends to support the chief assessor's figure. But in the absence of some evidence tending to show that the comparison with the $23,000 machine is valid and with the $30,000 and $16,000 machines less so, the board of review was not entitled to disregard the ratios which apply to the $30,000 and $16,000 machines. Use of those ratios would produce a much smaller value for the

Pure-Pak machines, $137,080. Upon the record as we have it, this is not a question of the weight to be given the evidence. That matter is for the board of review. Rather it appears that the board gave no weight at all to certain evidence. Perhaps facts exist which would entitle the board to disregard these ratios between rent and price of the $30,000 and $16,000 machines, but evidence of such explanatory facts is lacking.

*By the Court.*—Judgment reversed, cause remanded for further proceedings according to law.